In re the MARRIAGE OF Rodney HENDRICKS, Appellant–Respondent,

and

Bonnie Jean Hendricks, Appellee–Petitioner.

No. 43A03–9603–CV–86.

Court of Appeals of Indiana.

July 14, 1997.

Mark A. Thoma, Tremper, Bechert, Leonard & Terrill, Fort Wayne, for Appellant–Respondent.

John P. Geberin, Bowser & Geberin, Warsaw, for Appellee–Petitioner.

## OPINION

HOFFMAN, Judge.

Appellant-respondent Rodney Hendricks (Rodney) appeals the trial court's property division portion of the decree that dissolved his marriage to appellee-petitioner Bonnie Jean Hendricks (Bonnie). The facts relevant to this appeal are presented below.

Rodney and Bonnie were married on April 20, 1974. Two children were born of the marriage: Troy, born May 2, 1978 and Jacen, born October 6, 1980. During the marriage, Rodney worked as a self-employed contractor and Bonnie was employed as a factory worker. Rodney and Bonnie separated on June 20, 1994, and Bonnie filed a dissolution petition the following day.

During the marriage, Bonnie was primarily in charge of the family's finances. On February 12, 1992, several years prior to the commencement of this action, Bonnie opened a brokerage account at First National Bank in Warsaw, Indiana. On the account application, Bonnie indicated that the account should be in her name as well as that of her oldest child, Troy. Specifically, the application indicated that the brokerage account should be registered as "Custodian for Minor."

On March 24, 1992, Bonnie purchased 2,150 shares of Biomet stock through the brokerage account. Using joint marital funds, Bonnie paid $21 per share. On March 27, 1997, Bonnie purchased another 1,250 shares of stock at $20 per share. A third purchase of 300 shares of Biomet stock was made on June 17, 1992. Bonnie again used joint marital assets to purchase the stock, at a cost of $4,892. Shortly thereafter, however, Bonnie sold these 300 shares of Biomet stock for $5,700, and the proceeds of the sale were placed back into Rodney and her joint bank account. At the final hearing, Bonnie stated that she made money from the Biomet stock by "bobbing in and out" of the stock market when she could. She further stated that at the time the account was established her intent was to set up a college fund for the children, Troy and Jacen. Bonnie also explained that she was told when she originally established the brokerage account she should put the account in Troy's name for tax purposes.

After hearing evidence regarding the division of the marital property, including the Biomet stock, the trial court issued the following findings and conclusions:

**THE COURT FINDS:**

1. That an equal division of the marital property between the parties is just and reasonable and the parties each generally agreed and anticipated that an equal division of the marital property would be appropriate. Notwithstanding the general agreement of the parties as to an equal division of the marital property as required by I.C. 31–1–11.5–11, there were three areas where the parties may have disagreed as to what was marital property, those areas of dispute being (i) whether the value of an inheritance should be included as marital property; (ii) whether or not one or the other of the parties may have dissipated the marital property; and (iii) whether certain stock certificates and shares represented thereby were in fact marital property.

2. That 3,400 shares of the common stock of Biomet, Inc. common stock purchased by joint monies of the petitioner [Bonnie] and the respondent [Rodney] but registered in the name of Bonnie J. Hendricks c/f Troy Hendricks UINUGMA are not, in fact, items of marital property for division between the parties; however, the Court does have jurisdiction to deal with custodianship issues relating to those shares of stock.

3. That notwithstanding the fact that the certificates of Biomet, Inc. stock were issued in the name of a sole custodian under the Uniform Gift To Minor's Act (which act was repealed effective July 1, 1989 and replaced by the Uniform Transfers To Minor's Act), [t]he Uniform Transfer To Minor's Act did provide for a saving clause (I.C.30–2–8.5–36) which subjects gifts made under The Uniform Gifts To Minor's Act (erroneously) to be subject to the provisions of the Uniform Transfers To Minor's Act. Under the Uniform Transfers to Minors Act the Court cannot ignore the fact that custodial property was created and a transfer under the act was in fact made when the securities, 3400[sic] shares of Biomet, Inc. stock, were registered in the name of the transferor, Bonnie Hendricks, and followed by the words 'as custodian for Troy L. Hendricks under the Indiana Uniform Gift to Minor's Act.'

4. That a transfer by an irrevocable gift was made by Bonnie Hendricks to the child of the parties, Troy L. Hendricks and as a result thereof the 3,400 shares of Biomet, Inc. stock are not marital assets for division in this cause. The Court notes that both the petitioner [Bonnie] and the respondent [Rodney] indicated that it was their hope that their son, Troy L. Hendricks, would utilize the custodial property for educational purposes. Given that each

of the parties anticipate that Troy L. Hendricks will need the property given him for his education, it seems only appropriate that one-half of the shares of Biomet, Inc. stock should be held by the petitioner, Bonnie Hendricks, as Custodian for Troy L. Hendricks under the Uniform Transfers To Minor's Act and one-half of the shares of Biomet, Inc. stock should be reissued to Rodney Hendricks as Custodian for Troy L. Hendricks under The Uniform Transfer To Minor's Act.

5. That the petitioner, Bonnie Hendricks, should be responsible for bringing about the reissuance of the certificates as above found necessary by the Court.

       *    *    *    *    *    *

IT IS, THEREFORE, CONSIDERED AND ORDERED AS FOLLOWS:

       *    *    *    *    *    *

4. That with regard to the division of the marital property the Court orders an equal division thereof as being appropriate and having found that no factor set forth in I.C. 31–1–11.5–11(c) sufficient to persuade the Court to alter the presumption of equal division; however, the Court has included within the marital property a certain inheritance, certain monies dissipated by the respondent [Rodney] and has excluded 3,400 shares of the common stock of Biomet, Inc. therefrom.

5. That the petitioner, Bonnie Hendricks, shall forthwith cause to be issued from the 3,400 shares of common stock held by her as Custodian for Troy L. Hendricks 1,700 shares of common stock to Rodney Hendricks as Custodian for Troy L. Hendricks under the Uniform Transfers To Minors Act.

On November 22, 1995, Rodney filed a motion to correct error. The trial court granted that portion of the motion with respect to the alleged clerical error but denied the remainder of the motion. Rodney now appeals.

Restated, the issues presented for review are:

(1) whether the trial court erred in excluding the Biomet stock from the marital estate; and

(2) whether the trial court erred in failing to charge against Bonnie's share of the marital property, transfers of the joint marital assets made to the parties' minor child.

Initially, Rodney argues that the trial court erred in concluding that the marital funds used to establish a custodial brokerage account under Indiana's Uniform Transfers to Minors Act (UTMA)[1] constituted a fully completed gift to the parties' child, Troy Hendricks. Rodney argues that the brokerage account is, in fact, marital property and must be distributed as part of the marital estate. Further, he argues that the evidence discloses an absence of donative intent to make a gift to Troy.

Indiana's UTMA, IND. CODE § 30–2–8.5–24 (1993 Ed.), provides in relevant part:

(a) Custodial property is created and a transfer is made if:

(1) an uncertified security or certificated security in registered form is:

(A) registered in the name of:

(i) the transferor;

(ii) an adult other than the transferor; or

(iii) a trust company;

followed by the words: 'as custodian for _____ (name of minor) under the Indiana uniform transfer to minors act' or

(B) Delivered if in certificated form, or a document necessary for the transfer of an uncertified security is delivered, together with a necessary endorsement to an adult other than the transferor or to a trust company as custodian, accompanied by an instrument in substantially the form set forth in subsection (b);

---

1. Effective July 1, 1989, by Pub. Law 267–1989, § 2, the Indiana General Assembly enacted UTMA, IND. CODE § 30–2–8.5, which repealed and replaced the more restrictive Uniform Gifts to Minors Act (UGMA), IND. CODE § 30–2–8 *et. seq.* The UTMA validates all transfers made under its predecessor, the UGMA, and applies to those transfers except to the extent that its application would impair vested rights. *See* 2B, J.S. Grimes, *Henry's Probate Law and Practice* § 32, p. 116 (D.A. Falender, Cumulative Supp.1996).

(2) money is paid or delivered to a broker or financial institution for credit to an account in the name of:

    (A) the transferor;

    (B) an adult other than the transferor; or

    (C) a trust company;

followed by the words: 'as custodian for _____ (name of minor) under the Indiana uniform transfers to minors act'[.]

IND. CODE § 30–2–8.5–24(a)(1) and (2). Further,

A transfer made under section 24 of this chapter is irrevocable, and the custodial property is indefeasibly vested in the minor, but the custodian has all the rights, powers, duties, and authority provided in this chapter and neither the minor nor the minor's legal representative has a right, power, duty or authority with respect to the custodial property except as provided in this chapter.

IND. CODE § 30–2–8.5–26(b).

■ In 1957, the Indiana General Assembly introduced the concept of a custodian under the UGMA (now UTMA) as a fiduciary to receive gifts for minor. 2B, J.S. Grimes, *Henry's Probate Law and Practice* § 32, p. 795 (7th ed.1979). The purpose of the UTMA is to establish a legal mechanism to handle instances where minors receive money and property by gift and where it is not desirable to establish a possibly more cumbersome guardianship or a trust. *Id.* The statute was originally proposed by the New York Stock Exchange "to encourage the giving of securities to minors by providing 'a simple, inexpensive method of permitting minors to own securities in a manner that would protect the minor and third parties dealing with property owned by the minor and would at the same time permit the donor the advantage of the gift tax exclusion.'" *Gordon v. Gordon,* 70 A.D.2d 86, 89, 419 N.Y.S.2d 684, 687 (1979), *affirmed* 51 N.Y.2d 773, 417 N.E.2d 1009, 436 N.Y.S.2d 621 (1980) (*quoting,* Newman, *the Uniform Gift to Minors Act in New York and Other Jurisdictions–Tax Consequences, Possible Abuses, and Recommendations,* 49 Cornell L.Q. 12, 32); *see also,* Grimes, at p. 795.

■ The UTMA is designed to make an *inter vivos* gift to a minor in a relatively simplified manner. By conveying a gift in the manner presented by the statute, the minor obtains an indefeasibly vested legal title to the property which has been gifted, and once the gift is made, it is irrevocable. *See* IND. CODE § 30–2–8.5–26(b). An *inter vivos* gift requires proof of donative intent and delivery of the subject matter. *Hopping v. Wood,* 526 N.E.2d 1205, 1206 (Ind.Ct.App. 1988), *trans. denied; Kraus v. Kraus,* 235 Ind. 325, 330, 132 N.E.2d 608, 610–611 (1956). The UTMA expressly addresses the element of delivery in section 24. *See* IND. CODE § 30–2–8.5–24. The act further provides that the validity of the transfer is not affected by the failure of the transferor to comply with section 24(c) regarding possession and control. IND. CODE § 30–2–8.5–26(a)(1). The UTMA, however, has no provision regarding the element of donative intent.

Rodney phrases the central issue presented for our review as whether the language of the UTMA creates a conclusive presumption of donative intent. This issue is one of first impression in this state.

■ The handful of states which have addressed this issue have reached similar conclusions with which we agree. Each of these jurisdictions has held that although establishing a bank account in a minor's name in compliance with the provisions of the UGMA, now UTMA, is highly probative on the issue of donative intent, it does not create an irrebuttable presumption of intent. *In re Marriage of Stephenson,* 162 Cal.App.3d 1057, 209 Cal.Rptr. 383 (1984); *In re Marriage of Jacobs,* 128 Cal.App.3d 273, 180 Cal.Rptr. 234 (1982); *Golden v. Golden,* 434 So.2d 978 (Fla. Dist.Ct.App.1983), *petition for review denied; In re Marriage of Agostinelli,* 250 Ill.App.3d 492, 189 Ill.Dec. 898, 620 N.E.2d 1215 (1993); *Heath by Heath v. Heath,* 143 Ill.App.3d 390, 97 Ill.Dec. 615, 493 N.E.2d 97 (1986); *Gordon,* 70 A.D.2d 86, 419 N.Y.S.2d 684; *State v. Keith,* 81 Ohio App.3d 192, 610 N.E.2d 1017 (1991). Thus, documentary compliance with the statutory mechanisms of the UGMA, now UTMA, constitutes *prima facie* evidence that a gift has been made and intended. *See Gordon,* 70 A.D.2d at 91, 419 N.Y.S.2d at 688.

In appropriate circumstances, however, extrinsic evidence may be introduced to rebut the *prima facie* showing provided by compliance with the UGMA, now UTMA. *Id.; Golden*, 434 So.2d at 978.

Although we agree with Rodney that donative intent cannot be presumed under the UTMA, we disagree as to his interpretation of the trial court's findings. Rodney erroneously asserts that the trial court specifically concluded that a transfer under the UTMA creates a conclusive presumption of donative intent.

■ In its findings, the trial court first determined that the 3,400 shares of Biomet stock, which were purchased by joint monies but were registered in the name of Bonnie Hendricks "as custodian for Troy L. Hendricks under the Indiana Uniform Gift To Minor's Act," were not marital property. The court stated that it could not ignore the fact that a transfer under the act was made when the stock was registered. The court further noted "[t]hat a transfer by an irrevocable gift was made" and that both Rodney and Bonnie had indicated that they hoped Troy would utilize the custodial property for educational purposes. The trial court's findings do not result from a conclusive presumption of donative intent; rather, the trial court's findings and conclusions merely track the language of the statute. As explained by the court in *Gordon:*

> The portion of the UGMA which states that a gift made in the manner so prescribed is 'irrevocable and conveys to the minor indefeasibly vested legal title to' the property does not suggest a different result. This language presupposes the affirmative resolution of the issue with which we are concerned, i.e., was there a gift in the first instance. The essential element of donative intent refers to the grantor's initial intent at the time of the conveyance. Thus, once a UGMA security is purchased, or a UGMA custodian bank account is opened, the donor cannot change his mind and revoke the transfer. However, this is entirely different from allowing the voiding of a transfer because there never was the requisite donative intent. Similarly, the

language referring to indefeasibly vested legal title has no relation to the making of a gift in the first instance and instead serves to insure that the transferred property will be freely alienable, as limited by the other provisions of the statute.

*Gordon,* 70 A.D.2d at 91–92, 419 N.Y.S.2d at 688 (Citations omitted.).

■ In the present case, the signature card signed by Bonnie clearly constitutes a *prima facie* showing that the shares of Biomet stock established in the brokerage account were intended to be an irrevocable gift to the named minor, Troy Hendricks. At the hearing, Bonnie acknowledged opening the brokerage account in the name of Troy and signing the signature card as custodian. She additionally maintained that she had discussed opening the brokerage account with Rodney several months prior to opening the account under the UTMA. Although Bonnie repeatedly emphasized at trial and on appeal that it was her intent that the money was to be used for educational purposes, this does not rebut the presumption of a gift under the UTMA. The parties, as custodians under the UTMA, may pay over the custodial property for the support, maintenance, education, and benefit of Troy until he reaches twenty-one years of age, *see* IND. CODE § 30–2–8.5–29; Henry's, at p. 797, thus, insuring that at least some portion of the property is used for educational purposes. Further, Bonnie's initial deposits to the brokerage account of 2,150 shares of Biomet stock on March 24, 1992 and 1,250 shares of Biomet stock on March 27, 1992 have remained in the account. Any contention by either party that the account was set up to avoid taxes is inconsequential as often a donor of a gift seeks to lessen a potential tax burden. This evidence is sufficient to support the trial court's factual determination. Accordingly, there was no error in concluding that the 3,400 shares of Biomet stock were not marital property.

■ Rodney further asserts that the trial court erred in failing to charge against Bonnie's share of the marital property the trans-

fer of the Biomet stock made to Troy under Indiana's UTMA. As previously noted, Bonnie testified that although she was in charge of the family's finances during the marriage, she and Rodney discussed the custodial brokerage account prior to its establishment. Thus, the transfer was a mutual decision, and the trial court did not err in failing to charge the gift to either party's share of the marital property. The judgment of the trial court is affirmed.

Affirmed.

STATON and GARRARD, JJ., concur.