876 A.2d 904

**Harold C. STERNLICHT, Appellant,**

**v.**

**Lauri Davidson STERNLICHT, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 20, 2004.

Decided June 20, 2005.

150

Kerri Lee Cappella, Esq., Pittsburgh, for Harold C. Sternlicht.

Joanne Ross Wilder, Esq., Pittsburgh, for Lauri Davidson Sternlicht.

BEFORE: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Justice BAER.

The sole issue before this Court is whether the Pennsylvania Uniform Transfers to Minors Act (PUTMA), 20 Pa.C.S. § 5301–5321, superseded the common law requirement that donative intent must exist in order to have a valid, completed *inter vivos* gift pursuant to PUTMA. For the reasons that follow, we hold that PUTMA superseded the common law requirement that donative intent must exist in order to have a valid *inter vivos* gift under PUTMA, therefore rendering the intent of the donor irrelevant to the validity of a gift made pursuant thereto. We, therefore, affirm the order of the Superior Court.

Laurie Davidson Sternlicht, Appellee (Mother), and Harold C. Sternlicht, Appellant (Father), are the parents of J.K. Sternlicht (Daughter), who was born on September 12, 1993. Mother and Father separated on March 27, 1997 and divorced on May 4, 1999. A decree of equitable distribution was entered on March 16, 1999.

During their marriage, Mother and Father established an Ameritrade account for Daughter pursuant to PUTMA, with Father as sole custodian (the custodian account).[1] This account consisted of a monetary deposit that was used to

---

1. PUTMA is a uniform law, modeled on the Uniform Transfers to Minors Act (UTMA), which was approved by the National Conference of

purchase a portfolio of stock from several corporations. In March, 1997, when the parties separated, the custodian account portfolio value was $5,600. Between October, 1997, and December, 1998, Father, as the account custodian, deposited $46,500 into the custodian account which Ameritrade, as broker, used to purchase stock.[2] These deposits, along with the appreciation of the stock and accumulated income, increased the value of the custodian account portfolio to $53,700 as of December 31, 1998. In 1999, the value of the stock in the custodian account continued to appreciate substantially.

During various times in 1999, Father sold a total of $59,759 worth of stock from the custodian account and withdrew this

Commissioners on Uniform State Laws in 1983. Unif. Transfers to Minors Act, 8C U.L.A. 3, Historical Notes (1983). UTMA revised and restated its predecessor, the Uniform Gifts to Minors Act (UGMA). *Id.*

The creation of a PUTMA custodian account is a frequently employed technique for parents and others desiring to make completed, irrevocable transfers to minors, without having to engage in complicated legal transactions. *See Sutliff v. Sutliff*, 515 Pa. 393, 528 A.2d 1318, 1323 (1987). Such an account is created when the parent or other individual makes a transfer by irrevocable gift to, or the irrevocable exercise of a power of appointment in favor of, a custodian for the benefit of a minor pursuant to Section 5309 (relating to manner of creating custodial property and effecting transfer) until the minor-donee achieves the age of majority. 20 Pa.C.S. § 5304; *Sutliff*, 528 A.2d at 1323.

Transferring legal ownership to a minor pursuant to PUTMA allows the custodian to retain control of the property and to keep control away from the minor-donee, while concomitantly preserving certain federal tax benefits for the donor. *Sutliff*, 528 A.2d at 1323. Property transferred into a custodian account pursuant to PUTMA is owned by the donee-minor; the minor is vested with full and indefeasible title. 20 Pa.C.S. § 5311(b); *Sutliff*, 528 A.2d at 1323. A custodian holds, manages, invests, and dispenses the property in the PUTMA custodian account during the child's minority, but must deliver the property and the proceeds, plus accumulated interest and profit, to the minor when he or she reaches the age of twenty-one. *Sutliff*, 528 A.2d at 1323; 20 Pa.C.S. § 5320.

If the gift is money, the gift is accomplished by paying or delivering the money to a broker or a bank for credit to an account in the name of the donor, another person who has attained the age of 18 years, or a trust company followed in substance by the words: "as custodian for (name of minor) under the Pennsylvania Uniform Transfers to Minors Act." 20 Pa.C.S. § 5309(a)(2).

2. The $46,500 Father deposited into the custodian account to purchase stock was generated by Father's post-separation earnings and a $20,000 inheritance he received from his uncle.

amount, leaving a custodial portfolio value of less than $9000 as of the end of December, 2000. Father used the proceeds of the stock liquidation from the custodian account to pay Daughter's private school tuition and put a down payment on a new home.

Concerned that Father had improperly liquidated stock from the custodian account, on January 22, 2001, Mother filed with the trial court a Petition for Accounting requesting that Father produce all records of the transactions relating to the custodian account.[3] Although the trial court entered an order directing Father to produce all such records, Father did not produce any records demonstrating his management of the custodian account. Mother presented a Petition for Removal of Custodian and Other Relief on April 10, 2001, and a Petition for Enforcement on July 23, 2001, seeking to have Father restore the $59,759 he removed from the custodian account in 1999.[4] Mother argued that the money Father had deposited into the custodian account, which was used to purchase stock, constituted an irrevocable gift to Daughter pursuant to PUTMA. Specifically, Mother averred that pursuant to Sections 5309 (specifying the manner of creating custodial property) and 5311(b) (stating that "[a] transfer made pursuant to

---

3. Section 5319 of PUTMA provides for accounting and determination of liability of the custodian and provides, in relevant part:

(a) Petition.—[A]n adult member of the minor's family, a transferor or a transferor's legal representative may petition the court for: (1) an accounting by the custodian or the custodian's legal representative; ...

20 Pa.C.S. § 5319.

4. Section 5318(f) of PUTMA provides for removal of the custodian for cause and states in pertinent part:

Removal for cause.—A transferor, the legal representative of a transferor, an adult member of the minor's family, a guardian of the person of the minor, the guardian of the minor or the minor if the minor has attained 14 years of age may petition the court to remove the custodian for cause ...

20 Pa.C.S. § 5318(f). Mother had sought removal of Father as custodian of the account, but abandoned this issue on appeal.

The Petition for Enforcement concerned the transfer of stock and other equitable distribution matters not at issue on appeal. This Petition also requested attorney fees for Mother, which the trial court denied on August 24, 2001, and is not before us.

section 5309 is irrevocable, and the custodial property is indefeasibly vested in the minor . . ."), irrevocable custodial property was created when Father deposited the money into the custodian account. 20 Pa.C.S. §§ 5309, 5311(b).

Father opposed the petitions, arguing that, consistent with the common law, an *inter vivos* gift made pursuant to PUTMA requires delivery and donative intent, and that Father lacked donative intent. *See Wagner v. Wagner*, 466 Pa. 532, 353 A.2d 819, 821–22 (1976) ("Essential to the making of a valid gift are donative intent on the part of the donor and delivery of the subject matter to the donee"). Conceding that depositing the money into the custodian account constituted delivery, Father argued that without donative intent, the gift fails, and the money never became the property of Daughter.

The trial court held a hearing on Mother's petitions on August 20, 2001. At the hearing, Father testified that he had established the custodian account for Daughter, and his desire when the account was opened was to put money into the account for her.[5] Despite opening the account for the benefit of Daughter, Father also testified that his sole purpose in depositing money into the custodian account for the purchase of stock between October, 1997 and December, 1998, was to lessen his personal tax burden for capital gains.[6] He stated with regard to the custodian account transactions subsequent to March, 1997, that he did not intend to gift the money placed

5. Previously, at the parties' equitable distribution hearing on October 21, 1998, Father testified that the funds had been placed into and maintained in the custodian account as a college fund for Daughter. Accordingly, the fund had been excluded from equitable distribution.

6. PUTMA custodian accounts are opened to accomplish a variety of purposes. There are income tax, estate tax, and gift tax consequences to creation and ownership of PUTMA custodian accounts. For example, the donor may seek to shift income from the donor to the donee, who may be in a lower tax bracket and therefore taxed at a lower tax rate. Under Section 5311(b), the custodial property is indefeasibly vested in the minor, not the custodian, and thus any income received is attributable to and reported by the minor, whether or not actually distributed to the minor. 20 Pa.C.S. § 5311(b); Unif. Transfers to Minors Act, 8C U.L.A. 3, Prefatory Note (1983). Consistent with Father's testimony, the evidence established that there were capital gains in excess of $16,000 realized during 1999, which were identified on tax filings Father made on behalf of Daughter.

in the custodian account to Daughter. Finally, Father testified that the value of the stock that existed in the custodian account as of March, 1997 ($5,600) remained in the custodian account after the 1999 sale of stock.

On August 24, 2001, the trial court denied Mother's Petition for Removal of Custodian, finding that Father was not required to return any monies he had withdrawn from the custodian account. Following the common law requirements for an *inter vivos* gift, *i.e.*, delivery and donative intent, the trial court first noted the irrevocability of gifts made to minors under Section 5311(b) of PUTMA. However, because it believed that Father lacked donative intent to gift the subject funds to Daughter, the trial court held that the lack of donative intent defeated the irrevocability of the gift.

Relying on the plain language of Sections 5309 and 5311 of PUTMA, Mother appealed to the Superior Court, arguing that the trial court erred in failing to require Father to repay funds he had removed from the custodian account because this money constituted an irrevocable gift to Daughter and consequently should be repaid to her with interest.[7]  *See* 20 Pa.C.S. §§ 5309, 5311. After analyzing the purpose of PUTMA, the Superior Court agreed with Mother and found that the money Father transferred into the custodian account irrevocably became the property of Daughter, despite Father's testimony that he did not intend to gift this money to Daughter. Specifically, the court found that, contrary to the common law, PUTMA does not contain a requirement of donative intent before a gift made pursuant to PUTMA becomes the irrevocable property of the donee-minor, in accordance with the specific language of the statute.

██ Father filed a petition for allowance of appeal with this Court, arguing that the Superior Court erred and abused its discretion in concluding that donative intent is not required

7. Mother also argued on appeal before the Superior Court that the trial court erred in failing to require Father to pay Mother's legal expenses incurred in connection with Mother's Petition for Accounting and Petition for Removal of Custodian and for Other Relief; however, as noted previously, this issue is not before us on appeal.

in order to have a valid, completed *inter vivos* gift under PUTMA. We granted allocatur to determine whether PUTMA supersedes the common law requirement that donative intent must exist in order to have a valid, completed *inter vivos* transfer pursuant to that statute. This is an issue of first impression in the Commonwealth. As this is a question of law, our standard of review is *de novo* and our scope of review is plenary. *See In re Hickson,* 573 Pa. 127, 821 A.2d 1238, 1242 (2003).

As he argued in his petition for allowance of appeal to this Court, Father presently avers that while Section 5311(b) of PUTMA provides that gifts made thereunder become irrevocable, PUTMA does not dispense with the common law requirement that there must be donative intent in order to have a valid, completed *inter vivos* gift. According to Father's argument, the common law requirements of a gift survive the enactment of PUTMA, and a transfer of ownership by gift requires that there be a present donative intent. *See Wagner,* 353 A.2d at 821. Father asserts that because he merely intended to gain favorable tax consequences by depositing funds into the custodian account to purchase stock, rather than to gift the funds to Daughter, he lacked the common law requirement of donative intent and, therefore, the gift ultimately fails.

Father also relies on the decisions of several sister states that have found that transfers made to PUTMA custodian accounts are only *prima facie* evidence of a gift, allowing parties to rebut this presumption. *Gordon v. Gordon,* 70 A.D.2d 86, 419 N.Y.S.2d 684 (N.Y.App.Div.1979); *In re Marriage of Jacobs,* 128 Cal.App.3d 273, 180 Cal.Rptr. 234 (1982); *Golden v. Golden,* 434 So.2d 978 (Fla.Dist.Ct.App.1983); *State v. Keith,* 81 Ohio App.3d 192, 610 N.E.2d 1017 (Ohio Ct.App. 1991); *Gulmen v. Gulmen,* 913 S.W.2d 852 (Mo.Ct.App.1995); *Heath v. Heath,* 143 Ill.App.3d 390, 97 Ill.Dec. 615, 493 N.E.2d 97 (1986); *In re Marriage of Hendricks,* 681 N.E.2d 777 (Ind.Ct.App.1997). Father argues that the case for uniform interpretation of the applicable statute is compelling because

PUTMA is a uniform law. *See supra,* note 1.[8] Thus, according to Father, this Court should align the law of this Commonwealth with the decisions of our sister states that have codified their own versions of UTMA and considered the issue in this matter.

On the other hand, Mother argues that the legislature superseded the common law requirement of donative intent by enacting PUTMA and specifically excluding a requirement of such intent. Mother argues that there is no need to look to our sister states for guidance on this issue. In this regard, Mother argues that the rules of statutory construction prevent us from looking to the decisions of our sister states as the wording of PUTMA is clear and unambiguous. *See* 1 Pa.C.S. § 1921(b) ("[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit"). Thus, pursuant to a statutory construction analysis, Mother avers that PUTMA clearly states that custodial property is created in every instance in which the enumerated requirements have been met. *See* 20 Pa.C.S. § 5309.

██ As noted by Mother, in construing PUTMA, as in all cases involving the interpretation of a statute, we are guided by the provisions of the Statutory Construction Act, 1 Pa.C.S. § 1901 *et seq.* Under the Statutory Construction Act, the object of all statutory construction is to ascertain and effectuate the General Assembly's intention. *See* 1 Pa.C.S. § 1921(a) ("The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly"); *Hannaberry HVAC v. Workers' Compensation Appeal Bd. (Snyder, Jr.),* 575 Pa. 66, 834 A.2d 524, 531 (2003).

8.  In drafting UTMA, the uniform law on which PUTMA is modeled, the National Conference of Commissioners on Uniform State Laws noted that UGMA, the predecessor to UTMA, had been substantially revised by the states, resulting in a great deal of non-uniformity among the states. UTMA was meant to rectify this. As the commissioners explained, "[u]niformity in this area is important, for the Conference has cited UGMA as an example of an act designed to avoid conflicts of law when the laws of more than one state may apply to a transaction or a series of transactions." Unif. Transfers to Minors Act, 8C U.L.A. 3, Prefatory Notes (1983).

"Generally speaking, the best indication of legislative intent is the plain language of a statute." *Commonwealth v. Gilmour Manufacturing Co.*, 573 Pa. 143, 822 A.2d 676, 679 (2003) (citations omitted). "Furthermore, in construing statutory language, '[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage....' " *Id.* (quoting 1 Pa.C.S. § 1903). The Act further provides that, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b); *see also Scheipe v. Orlando,* 559 Pa. 112, 739 A.2d 475, 478 (1999).

▪ Under Section 1921(c) of the Statutory Construction Act, it is only when the words of a statute "are not explicit" that a court may resort to other considerations, such as the statute's perceived "purpose," in order to ascertain legislative intent.[9] Consistent with the Statutory Construction Act, this Court has repeatedly recognized that rules of construction, such as consideration of a statute's perceived "object" or "purpose," are to be resorted to only when there is an ambiguity in the meaning of the words. *See O'Rourke v. Commonwealth, Dep't of Corrections,* 566 Pa. 161, 778 A.2d 1194, 1201 (2001) *(citing In re Kritz' Estate,* 387 Pa. 223, 127 A.2d 720, 723 (1956)); *Ramich v. WCAB (Schatz Electric, Inc.),* 564 Pa. 656, 770 A.2d 318, 322 (2001) ("Only when the language of the statute is ambiguous does statutory construction become necessary.") *(citing* 1 Pa.C.S. § 1921(c)); *Oberneder v. Link Computer Corp.,* 548 Pa. 201, 696 A.2d 148, 150

9. Pursuant to Section 1921(c) of the Statutory Construction Act, when the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:
   (1) The occasion and necessity for the statute.
   (2) The circumstances under which it was enacted.
   (3) The mischief to be remedied.
   (4) The object to be attained.
   (5) The former law, if any, including other statutes upon the same or similar subjects.
   (6) The consequences of a particular interpretation.
   (7) The contemporaneous legislative history.
   (8) Legislative and administrative interpretations of such statute.

(1997); *Pennsylvania Fin. Responsibility Assigned Claims Plan v. English,* 541 Pa. 424, 664 A.2d 84, 87 (1995) ("Where the words of a statute are clear and free from ambiguity the legislative intent is to be gleaned from those very words").

Applying the rules of statutory construction to PUTMA, we conclude that the clear language demonstrates the irrevocability of a gift thereunder regardless of donative intent. Specifically, we examine the language of Sections 5304, 5311, and 5309 of PUTMA under 1 Pa.C.S. § 1921(a).

Initially, we turn to the express language Sections 5304 and 5311, which Mother contends demonstrates the irrevocability of the gift, regardless of donative intent. As noted previously, pursuant to Section 5304, which addresses the irrevocable nature of transfers to PUTMA accounts, the minor is vested with full and indefeasible title. Section 5304 provides:

> A person may make a transfer by irrevocable gift to, or the irrevocable exercise of a power of appointment in favor of, a custodian for the benefit of a minor pursuant to section 5309 (relating to manner of creating custodial property and effecting transfer).

20 Pa.C.S. § 5304.[10] Whatever the source, custodial property held pursuant to Section 5304 is the property of the minor child. *See Sutliff,* 528 A.2d at 1323. While a custodian holds, manages, invests, and dispenses the property during the child's minority, 20 Pa.C.S. § 5312(a), the custodian must deliver the property and proceeds, plus accumulated interest and profit, to the minor when the minor reaches the age of twenty-one. 20 Pa.C.S. § 5320; *Sutliff,* 528 A.2d at 1323. The custodian, furthermore, must use the property for the minor's benefit before the minor reaches the age of 21. 20 Pa.C.S. § 5314(a); *Schwartz' Estate,* 449 Pa. 112, 295 A.2d 600, 603 (1972) (holding that a custodian may not use custodian property to benefit himself).

**10.** PUTMA defines "transfer" as "[a] transaction that creates custodial property under Section 5309 (relating to manner of creating custodial property and effecting transfer)." 20 Pa.C.S. § 5301(b). "Custodial property" is defined as "[a]ny interest in property transferred to a custodian under this chapter and the income from and proceeds of that interest in property." *Id.*

Furthermore, a transfer is irrevocable pursuant to Section 5311(b), which addresses the validity and effect of transfer, providing:

A transfer made pursuant to section 5309 is irrevocable, and the custodial property is indefeasibly vested in the minor, but the custodian has all the rights, powers, duties and authority provided in this chapter, and neither the minor nor the minor's legal representative has any right, power, duty or authority with respect to the custodial property except as provided in this chapter.

20 Pa.C.S. § 5311(b). We agree with the Superior Court that the plain meaning of Section 5311(b) is that a transfer made into a PUTMA custodian account is irrevocable and the vesting of custodial property in the minor cannot be undone. These provisions of PUTMA are unambiguous on their face and must be given effect in accordance with their plain and common meaning. Absent ambiguity, the plain meaning of the statute controls. *See In re Canvass of Absentee Ballots of November 4, 2003*, 577 Pa. 231, 843 A.2d 1223 (2004). The plain and common meaning is that money transferred into a custodian account pursuant to PUTMA is irrevocably the property of the minor. 20 Pa.C.S. §§ 5304, 5311(b).

When we examine the language of Section 5304, as quoted above, we see that Section 5309 is the statutory provision regarding transfers that triggers the provisions of Sections 5304 and 5311 concerning the irrevocability of the gift. We will therefore examine the specific language of Section 5309, which sets forth, in relevant part, the requirements for creating custodial property under PUTMA:

(a) Creation of custodial property.—Custodial property is created and a transfer is made whenever:

\* \* \*

(2) Money is paid or delivered to a broker or financial institution for credit to an account in the name of the transferor, an adult other than the transferor or a trust company, followed in substance by the words: "as custodian

for (name of minor) under the Pennsylvania Uniform Transfers to Minors Act."

20 Pa.C.S. § 5309(a)(2).[11]  Under the plain language of Section 5309(a)(2), therefore, property transferred under PUTMA is owned by the donee-minor at the time the money is "paid" or "delivered" into an account in the name of the custodian for a minor, irrespective of the intent of the donor, despite the fact that the drafters would have been aware of the common law requirement of donative intent.

As further support for the conclusion that PUTMA does not require donative intent, the statute expressly limits its application as follows:

This chapter applies to a transfer that refers to this chapter in the designation under section 5309(a) (relating to manner of creating custodial property and effecting transfer) by which the transfer is made if, at the time of the transfer, the transferor, the minor or the custodian is a resident of this Commonwealth or the custodial property is located in this Commonwealth.  The custodianship created remains subject to this chapter despite a subsequent change in residence of a transferor, the minor, or the custodian or the removal of custodial property from this Commonwealth.

20 Pa.C.S. § 5302(a).  Thus, there is neither a requirement nor a limitation in the application of PUTMA relating to a transferor's intent.

█  Moreover, transfers made to a custodian account pursuant to PUTMA are not controlled by common law requirements of delivery and acceptance of the gift.  Indeed, there is no requirement that the minor for whose benefit the account is opened even be aware of the account, let alone accept it,[12] notwithstanding that this is inconsistent with the traditional

11.  This decision is equally applicable to other transfers made pursuant to Section 5309 of PUTMA.

12.  We note that often times parents open PUTMA custodian accounts for their infant children, who, by lack of cognitive functioning, are necessarily unaware of these gifts, and unable to accept them.  Indeed, the statute was arguably created to allow for such gifts in contravention of the common law.

common law elements of a gift. *See* In re *Sipe's Estate*, 492 Pa. 125, 422 A.2d 826, 828 (1980) (noting that the requirements for a gift are intent, delivery, and acceptance). Further, under PUTMA's statutory scheme, the minor does not receive dominion and control over the transferred property. *See In re Estate of Evans*, 467 Pa. 336, 356 A.2d 778, 781 (1976) ("In order to effectuate an *Inter vivos* gift there must be evidence of an intention to make a gift and a *delivery*, actual or constructive, of a nature sufficient not only to *divest the donor* of all dominion over the property but also *invest the donee* with complete control over the subject-matter of the gift"). On the contrary, under the statute, where the transferor is the custodian, the transferor retains control of the funds within the limitations of the statute, leaving the minor with no control over the gifted property.[13]

13. We are aware that because PUTMA is a uniform law, Section 1927 of the Statutory Construction Act, 1 Pa.C.S. § 1927, is implicated. This section states that "[s]tatutes uniform with those of other states shall be interpreted and construed to effect their general purpose to make uniform the laws of those states which enact them." *Id.* Accordingly, in construing a uniform law, this Court must consider the decisions of our sister states who have adopted and interpreted such uniform law and must afford these decisions great deference. *See Commonwealth v. National Bank & Trust Co. of Central Pennsylvania*, 469 Pa. 188, 364 A.2d 1331, 1335 (1976).

We are further aware, as Father points out, that several states have found that transfers made to PUTMA accounts are only *prima facie* evidence of a gift, allowing parties to rebut this presumption. *Gordon v. Gordon*, 70 A.D.2d 86, 419 N.Y.S.2d 684 (N.Y.App.Div.1979); *In re Marriage of Jacobs*, 128 Cal.App.3d 273, 180 Cal.Rptr. 234 (1982); *In re Marriage of Hendricks*, 681 N.E.2d 777 (Ind.Ct.App.1997); *Golden v. Golden*, 434 So.2d 978 (Fla.Dist.Ct.App.1983); *Gulmen v. Gulmen*, 913 S.W.2d 852 (Mo.Ct.App.1995); *State v. Keith*, 81 Ohio App.3d 192, 610 N.E.2d 1017 (Ohio Ct.App.1991); *Heath v. Heath*, 143 Ill.App.3d 390, 97 Ill.Dec. 615, 493 N.E.2d 97 (1986).
However, having concluded that the language of PUTMA is clear and unambiguous under 1 Pa.C.S. § 1921(b) ("[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit") it would be inappropriate for us to disregard this most basic tenet of statutory construction in an effort to align Pennsylvania with other states. Further, the vast majority of the states have not yet addressed this issue. We are not convinced that once more states examine this issue they too will read into the statute the requirement of donative intent. To the contrary, we believe that it is our conclusion that the language clearly

■ The final question deserving of analysis concerns whether the common law can trump statutory law. Under the circumstances of this case, clearly, it cannot. *See* N. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 50:05 (6th ed.2000) ("general and comprehensive legislation, where course of conduct, parties, things affected, limitations and exceptions are minutely described, indicates a legislative intent that the statute should totally supersede and replace the common law dealing with the subject matter"). A common law doctrine may not, after a statutory pronouncement on the same subject, continue to develop in a manner inconsistent with the statute. *See id.* at § 50:01 ("In cases of conflict between legislation and the common law, legislation will govern because it is the latest expression of the law."). Where the Legislature expressly provides a comprehensive legislative scheme, these provisions supersede the prior common law principles. We believe the legislature clearly intended PUTMA to be a comprehensive legislative scheme governing gifts to minors, as it has specified that PUTMA applies to a transfer that refers to it in the designation by which the transfer is made if, at the time of the transfer, the transferor, the minor or the custodian is a resident of Pennsylvania or the custodial property is located in the state. *See* 20 Pa.C.S. § 5302(a), referring to 20 Pa.C.S. § 5309(a) (relating to manner of creating custodial property and effecting transfer).

Here, Father established the custodian account on behalf of Daughter. Father testified that he intended the initial custodian account portfolio value of $5600, which existed in March, 1997, to be a gift to Daughter. Between July, 1997 and December, 1998, Father deposited an additional $46,500 into the custodian account for the purchase of stock. Father testified that he made these deposits to obtain favorable tax treatment, and did not intend to gift the stock proceeds in the custodian account to Daughter. However, as discussed above, Father's intention to avoid tax consequences by depositing the funds into the custodian account and Father's lack of donative

does not require such intent which will become the majority view as more state supreme courts consider this issue.

intent as found by the trial court are of no consequence under the clear language and principles of PUTMA. The funds became the property of Daughter when they were deposited into the custodian account.

We agree with the finding of the Superior Court that Father's intent to avoid tax consequences did not defeat the effect of a transfer pursuant to Section 5309 of PUTMA. Accordingly, the order of the Superior Court is affirmed.

Chief Justice CAPPY files a concurring opinion in which Mr. Justice SAYLOR joins.

Chief Justice CAPPY, concurring.

Although I agree with the result reached by the Majority, because I arrive at that conclusion for different reasons, I am compelled to write separately. More specifically, the Majority holds that a transfer of property into a custodial account established pursuant to the Pennsylvania Uniform Transfers to Minors Act ("PUTMA"), 20 Pa.C.S. §§ 5301–23, is the irrevocable property of the minor beneficiary of the account, regardless of the transferor's intent at the time of the transfer. In my view, however, the words of PUTMA clearly and unambiguously make the transferor's intent relevant. I believe that this is so because PUTMA provides that "[a] person may make a transfer by irrevocable gift ...," 20 Pa.C.S. § 5304, and in order to make a gift, there must be donative intent. Here, since Father transferred funds into his daughter's PUTMA account, intending the transfers as gifts to her, the transferred funds were irrevocable gifts under PUTMA. Accordingly, albeit for different reasons than the Majority, I would affirm the order of the Superior Court.

PUTMA allows for transfers by several means: by gift or exercise of power of appointment, by will or trust, by fiduciary, or by obligor. 20 Pa.C.S. §§ 5304–07. This case involves a transfer by gift; therefore, Section 5304 of PUTMA is the specific provision that controls this matter. Section 5304, entitled "Transfer by gift or exercise of power of appointment," provides that

[a] person may make a transfer *by irrevocable gift* to, or the irrevocable exercise of a power of appointment in favor of, a custodian for the benefit of a minor pursuant to section 5309 (relating to manner of creating custodial property and effecting transfer).

20 Pa.C.S. § 5304 (emphasis added). The emphasized language above clearly and unambiguously requires that a transfer under this section must be by gift, and if in fact the transfer is a gift, then the gift would be irrevocable.

The Legislature did not define "gift" in PUTMA. In such circumstances, the Legislature mandates that a word be construed according to its common and approved usage, unless the word is technical. 1 Pa.C.S. § 1903(a). If a word is technical and has acquired a peculiar and appropriate meaning, then the word must be construed according to that peculiar and appropriate meaning. *Id.* As described below, "gift" is a technical word that has acquired a peculiar and appropriate meaning.

Specifically, in this Commonwealth, "[e]ssential to the making of a valid gift are donative intent on the part of the donor and delivery of the subject matter to the donee." *Wagner v. Wagner,* 466 Pa. 532, 353 A.2d 819, 821 (1976) (citations omitted); *see also Fuisz v. Fuisz,* 527 Pa. 348, 591 A.2d 1047, 1050 (1991) (stating that *"a transfer of ownership by gift* requires that there be a present donative intent . . .") (emphasis added).[1] Under our precedent, it is this legal understanding of the word "gift" that we must apply to Section 5304. *See Semasek v. Semasek,* 509 Pa. 282, 502 A.2d 109, 111 (1985) (finding that a statute's use of the term "gift" was unambiguous, that "gift" has a definite meaning, and that "[o]ur law requires only donative intent, delivery and acceptance").

1. This Court sometimes requires "acceptance" as a third element of a gift. *In re Sipe's Estate,* 492 Pa. 125, 422 A.2d 826, 828 (1980); *Wagner,* 353 A.2d at 822 n. 5. We, however, have recognized that "[o]ften there is no express acceptance by the donee, but if the gift is beneficial to the donee[, then] acceptance is presumed in the absence of evidence of rejection." *Id.* (citation omitted).

Under the common law, when the validity of a gift is challenged, the alleged donee of an *inter vivos* gift has the burden of proving by clear and convincing evidence that delivery to the donee occurred and that the alleged donor had donative intent. *In re Pappas' Estate*, 428 Pa. 540, 239 A.2d 298 (1968). "Once *prima facie* evidence of a gift is established, a presumption arises that the gift is valid, and the burden is then on the contestant to rebut the presumption by clear, precise and convincing evidence." *Banko v. Malanecki*, 499 Pa. 92, 451 A.2d 1008, 1010 (1982) (citation omitted).

PUTMA, however, clearly indicates that PUTMA accounts are depositories for custodial property. *See, e.g.*, 20 Pa.C.S. § 5309(a)(2) (providing that "[c]ustodial property is created and a transfer is made whenever ... [m]oney is paid or delivered to a broker or financial institution for credit to an account in the name of the transferor, an adult other than the transferor or a trust company, followed in substance by the words: 'as custodian for (name of minor) under [PUTMA]' "). Therefore, under PUTMA, when property is transferred in compliance with Section 5309, such compliance demonstrates completed delivery of the property and *prima facie* evidence of donative intent on the part of the transferor. Once this *prima facie* evidence of a gift is established, a rebuttable presumption arises that the gift is valid, and the burden is on the party challenging the validity of the gift to rebut the presumption by clear and convincing evidence. Because the clear and unambiguous words of Section 5304 require that a transfer be by gift and because, in order for a gift to be valid, an alleged donor must have had donative intent, this burden-shifting analysis applies when a party challenges a transfer of property by gift into a PUTMA account.

Turning to the Majority Opinion, the interpretation of PUTMA adopted by the Majority runs afoul of this construct and, more specifically, of two fundamental presumptions of statutory construction. First, by employing a literal interpretation of Sections 5309 and 5311(b) in holding that a transfer of property into a PUTMA account is the irrevocable property of the minor beneficiary of the account regardless of the transferor's

intent, the Majority has given no force to Section 5304, specifically to that section's use of the phrase "by irrevocable gift." Such an interpretation is counter to the presumption "[t]hat the General Assembly intends the entire statute to be effective and certain." 1 Pa.C.S. § 1922(2).

Second, if the Legislature did not intend to require donative intent in order for a gift to be valid under PUTMA, then the application of PUTMA would lead to absurd and unreasonable results. It is not difficult to imagine how a person could transfer funds into a PUTMA account without donative intent. For instance, while banking on-line, one could intend to transfer funds into his or her personal account, but due to a mistaken click of the mouse, the person accidentally deposits the funds into his or her child's PUTMA account. Similarly, an intended transfer by gift of funds into one child's PUTMA account could be transferred erroneously into the PUTMA account of another child. Under the Majority's interpretation, the money transferred under these circumstances would be the irrevocable property of the minor beneficiary of the PUT-MA account into which the transfer was made, regardless of the transferor's lack of donative intent. Majority Opinion at 159–60, 876 A.2d at 910 ("The plain and common meaning is that money transferred into a custodian account pursuant to PUTMA is irrevocably the property of the minor.") (citations omitted). Such results are patently unreasonable and absurd and run contrary to the presumption that the General Assembly does not intend results that are absurd or unreasonable. 1 Pa.C.S. § 1922(1).

I also am compelled to express my disagreement with the Majority's treatment of Section 1927 of the Statutory Construction Act, 1 Pa.C.S. § 1927. PUTMA is undeniably a uniform law, the interpretation of which implicates Section 1927. The Majority recognizes this, but rather than examining the decisions of our sister states, the Majority relegates its discussion of Section 1927 to a footnote and asserts that when an issue raised in the context of a uniform law can be addressed by Section 1921(b) of the Statutory Construction

Act, 1 Pa.C.S. § 1921(b), it is inappropriate to analyze the uniform law under Section 1927.

To the contrary, Section 1927 states that "[s]tatutes uniform with those of other states *shall* be interpreted and construed to effect their general purpose to make uniform the laws of those states which enact them." 1 Pa.C.S. § 1927 (emphasis added); *see Commonwealth v. National Bank & Trust Co. of Central Pennsylvania*, 469 Pa. 188, 364 A.2d 1331, 1335 (1976) (finding in the context of construing a uniform law that "[w]hile it is a truism that decisions of sister states are not binding precedent on this Court, they may be persuasive authority and are entitled to even greater deference where consistency and uniformity of application are essential elements of a comprehensive statutory scheme ..."); *see also Commonwealth v. Gilmour Manufacturing Co.*, 573 Pa. 143, 822 A.2d 676, 682 (2003) (stating that "uniform interpretation of legislation affecting multi-state matters is preferable ....") (citing to 1 Pa.C.S. § 1927). While we are not bound by the decisions of our sister states, in my view, consistent with the legislative mandate set forth in Section 1927, we must consider these decisions and afford them deference when those states have adopted the uniform law under scrutiny and have considered the issue presented to this Court. I, therefore, will consider the decisions of our sister states.

Our sister courts generally hold that the establishment of a custodial bank account in accordance with the provisions of the Uniform Transfers to Minors Act ("UTMA") or UTMA's predecessor, the Uniform Gifts to Minors Act, creates a rebuttable presumption of donative intent. *See, e.g., In re Marriage Hendricks*, 681 N.E.2d 777, 781 (Ind.Ct.App.1997) (adopting other jurisdictions' conclusions that "although establishing a bank account in a minor's name in compliance with the provisions of the UGMA, now UTMA, is highly probative on the issue of donative intent, it does not create an irrebuttable presumption of intent") (citing to *In re Marriage of Stephenson*, 162 Cal.App.3d 1057, 209 Cal.Rptr. 383 (1984); *In re Marriage of Jacobs*, 128 Cal.App.3d 273, 180 Cal.Rptr. 234 (1982); *Golden v. Golden*, 434 So.2d 978 (Fla.Dist.Ct.App.

1983); *In re Marriage of Agostinelli,* 250 Ill.App.3d 492, 189 Ill.Dec. 898, 620 N.E.2d 1215 (1993); *Heath v. Heath,* 143 Ill.App.3d 390, 97 Ill.Dec. 615, 493 N.E.2d 97 (1986); *Gordon v. Gordon,* 70 A.D.2d 86, 419 N.Y.S.2d 684 (1979); and *State v. Keith,* 81 Ohio App.3d 192, 610 N.E.2d 1017 (Ohio Ct.App. 1991)). Thus, the analytical construct that I would employ regarding a transfer by gift here is in accord with the decisions of our sister states. I, therefore, believe that the analysis that I would adopt is consistent with Section 1927 of the Statutory Construction Act.

Turning to the disposition of this matter, Father contends that he rebutted the presumption that he intended the transfers he made into his daughter's PUTMA account between October 1997 and December 1998 as gifts to his daughter. He bases this contention on his testimony that he did not intend to donate to his daughter the stocks purchased with the transferred funds but, rather, that he merely transferred the funds into the PUTMA account because he was "under the impression that you had better tax advantages to put [the funds] into a custodial account then [sic] into your own account." N.T., 8/20/01, at 47.

Father confuses "intent" with "motive." While Father may have been motivated to transfer his funds to his daughter in order to lessen his tax burden, he only received such a benefit *because he gifted the funds to her.* As we have stated before, "[a] transfer motivated by an attempt to avoid [ ] taxes is 'not inconsistent with a donative intent, but rather positively suggests such an intent.' " *Sutliff v. Sutliff,* 518 Pa. 378, 543 A.2d 534, 539 (1988) (citation omitted). Father did not "erroneously" transfer funds into his daughter's PUTMA account and "accidentally" receive tax benefits. In fact, Father filed a 1999 tax return in his daughter's name wherein he attributed the income from the sale of the stocks purchased with the transferred funds *to his daughter.* He, therefore, considered the transferred funds gifts to his daughter for tax purposes. Accordingly, as a matter of law, Father's testimony fails to rebut the presumption that he intended the transfers as gifts.

Because Father failed to rebut the presumption of donative intent relative to the transfers he made into his daughter's PUTMA account between October of 1997 and December of 1998, those funds were irrevocable gifts to his daughter. Accordingly, for the reasons stated above, I would affirm the order of the Superior Court, albeit on different grounds than the Majority.

Mr. Justice SAYLOR joins this concurring opinion.