# City of Sharon Sanitary Authority v.
# Office of Open Records

*William J. Madden,* for petitioner.
*William G. McConnell Jr.,* for respondents.

ST. JOHN, *J.,* January 26, 2010—A sewer authority denied a request for a list of people with delinquent sewer accounts. The authority wanted to release the names, but its attorney was concerned that it would violate consumer protection laws and expose the authority to civil damages. Release of the requested information, pursuant to a court order, however, would insulate the authority from damages and/or civil penalties. It is this court's holding after close review of the respective statutes, that the relevant consumer protection statutes are not in conflict with Pennsylvania's new Right-to-Know Law. Hence, the de novo appeal will be denied and the authority will be ordered to release the requested information.

The City of Sharon Sanitary Authority is a municipal authority created by the City of Sharon around September of 2007. Part of the authority's function is to maintain financial records it inherited from the city regarding uncollected debt for prior sewer accounts, and to maintain financial records for property owners who purchased sewer services in the City of Sharon thereafter. In addition, the authority is mandated to collect past and future debts for such services.

Courtney Lynn Anderson is a reporter for *The Herald* who attends the monthly board meetings of the authority as part of her duties as a reporter. She has also written various articles in *The Herald* about the delinquent ac-

counts owed to the authority. As part of her investigative reporting, Ms. Anderson submitted a request on June 3, 2009 as an individual, pursuant to Pennsylvania's Right-to-Know Law, seeking access to delinquent sewer accounts, including the names and addresses of those individuals who were delinquent. Obviously, there is a strong likelihood that she would write follow-up articles disclosing various information including the names of those individuals who are delinquent, as she has before and after the de novo hearing on her request. The authority denied her request upon the sage advice of its solicitor.

It is uncontested that the authority is in favor in principle of releasing the information to respondent because the authority believes that it will result in higher collections on past due accounts. It is fearful, however, that it will be liable under various consumer protection statutes.

The sole question presented here is whether Pennsylvania's Right-to-Know Law, when read in conjunction with these consumer protection statutes, prohibits the disclosure of this delinquent account information. This is an issue of first impression that can only be resolved by comparing the language in the respective statutes. Chief Justice Castille aptly defined the court's role when interpreting statutes as follows:

" 'The object of statutory interpretation is to determine the intent of the General Assembly.' *PennDOT v. Weaver,* [590 Pa. 188, 195] 912 A.2d 259, 264 (2006) (citing 1 Pa.C.S. §1921(a)). The touchstone of statutory interpretation is that where a statute is unambiguous, *the*

*judiciary may not ignore the plain language* 'under the pretext of pursuing its spirit,' 1 Pa.C.S. §1921(b), for the language of a statute is the best indication of legislative intent. *Weaver,* 590 Pa. at 195, 912 A.2d at 264. Words and phrases should be construed in accordance with their common and approved usage. 1 Pa.C.S. §1903(a). When the words of a statute are clear, there is no need to look beyond the plain meaning of a statute. See *e.g., Commonwealth v. McClintic,* 589 Pa. 465, 472, 909 A.2d 1241, 1245 (2006) (citing *Sternlicht v. Sternlicht,* 583 Pa. 149, 158, 876 A.2d 904, 909 (2005) and *Ramich v. Workers' Comp. Appeal Bd. (Schatz Elec. Inc.),* 564 Pa. 656, 662, 770 A.2d 318, 322 (2001)). If a statute is deemed ambiguous, however, resort to principles of statutory construction is appropriate. 1 Pa.C.S. §1921(c); *Commonwealth v. Packer,* 568 Pa. 481, 488-89, 798 A.2d 192, 196 (2002)." *Colville v. Allegheny County Retirement Board,* 592 Pa. 433, 444, 926 A.2d 424, 430-31 (2007) (emphasis added); quoted with approval in *Commonwealth v. Cox,* 983 A.2d 666, 703 (Pa. 2009).

Moreover, the court must construe every statute, "if possible, to give effect to all of its provisions." 1 Pa.C.S. §1921(a). *Sterling Acceptance Co. v. Grimes,* 194 Pa. Super. 503, 168 A.2d 600 (1961). Thus, the court's initial task is to compare and review the relevant portions of Pennsylvania's Right-to-Know Law with the consumer protection statutes to see if there is any ambiguity and/ or if they can be interpreted in pari materia.

Access to public records in Pennsylvania was previously governed by a law that was enacted in 1957. 65 P.S. §§66.1 through 66.4 (Purdon's 2000). This law was substantially revamped by the new "Right-to-Know

Law" which became effective February 14, 2008, 65 P.S. §67.101 et seq. (Purdon's Supp. 2009). The goal of the new law was to expand and streamline access to public records. Accordingly, the new law created the presumption that a "record" possessed by a local agency "shall be presumed to be a public record." *Id.* at section 67.305(a). The legislature, however, provided that this presumption is removed if the record is exempt under section 67.708, protected by a privilege and/or is "exempt from disclosure under any federal or state law or regulation or judicial order or decree." *Id.* at section 67.102. (See definition of "public record.") The legislature also imposed the burden of proving that a record was exempt upon the government agency. *Id.* at section 67.708(a) (1).[1]

The solicitor for the authority posits that the list of past due account holders is exempt from disclosure under part of the definition of a "public record." A public record is defined as follows:

"Public record. A record, including a financial record, of a Commonwealth or local agency that: (1) is not exempt under section 708; *(2) is not exempt from being disclosed under any other federal or state law* or regulation or judicial order or decree; or (3) is not protected by a privilege." *Id.* at section 67.102. (emphasis added)

Notably, section 708 of the Act not only imposes the burden upon the authority to prove by a preponderance of the evidence that a record is exempt from public ac-

---

1. It is uncontested that the authority is an "agency" and that the information sought is a "record" and a "financial record" as all of those terms are defined in section 67.102.

cess, but it also contains a very extensive list of exemptions. *Id.* at section 67.708(a) through (b). Nonetheless, the authority does not argue that any of these well-defined exemptions prevent disclosure in this case. Instead, it argues that these records cannot be disclosed because they do not fall under the definition for a public record because they are already exempt from disclosure under federal and state law. In reviewing the new Right-to-Know Law it is noteworthy that the legislature did not specifically list the statutes referred to by the authority under the section 67.708 exemptions where it listed in great detail some of the other circumstances where records were not to be disclosed. This, of course, creates the inference that the legislature had not intended that the consumer protection statutes referred to by the authority prevent disclosure under the Right-to-Know Law. Furthermore, in reviewing the consumer protection statutes, it is important to view those statutes in light of their stated legislative intent, and the presumption of disclosure in the Right-to-Know Law as well as its prohibition that the intended use of the public record is generally irrelevant. *Id.* at sections 67.305(a) and 67.302(b). Thus, the authority cannot generally deny access to a record even if they know that the requestor will do something with the information that the authority could not itself do, such as in this situation.

The applicable consumer protection statutes are the following debt collection statutes:

(1) The Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §1692 et seq.; and

(2) The Pennsylvania Fair Credit Extension Uniformity Act (FCEUA), 73 P.S. §2270.1 et seq.

The Fair Debt Collection Practices Act was enacted by Congress to curb abuses by debt collectors. 15 U.S.C. §1692(a). Thus, the FDCPA was created to eliminate abusive debt collection practices, to prevent a competitive advantage to those who were using abusive collection practices, and to create state action to protect consumers against abusive debt collection practices. *Id.* at section 1692(e). The FDCPA does not permit conduct by a debt collector "the natural consequence of which is to harass, oppress, or abuse any person in connection with a collection of a debt." *Id.* at section 1692d. This section specifically prohibits: "(3) The publication of a list of consumers who allegedly refused to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title."

The FDCPA also prohibits certain communications by the debt collector with third parties without the consent of the consumer *"or the express permission of the court of competent jurisdiction,"* if the communication is *"in connection with the collection of any debt, . . . ." Id.* at section 1692c(b). (emphasis added) The clear language and intent of these prohibitions is to prevent abusive debt collection practices. All of the prohibited acts are illegal only if done "in connection with the collection of a debt." Therefore, under a plain reading of the FDCPA, the release of information by the authority of delinquent account holders to respondent would be for the purpose of complying with the Right-to-Know Law, not for the purpose of collecting on the debt. Obviously, Congress was not and is not attempting to prevent the public's access to public records, even though the consequence may

be that the information is published. These statutes were enacted to protect two separate and distinct interests. First, the consumer from unfair, deceptive and/or abusive debt collection practices. Secondly, the public's right to access information about the financial records of local agencies. Similarly, the Commonwealth of Pennsylvania enacted the FCEUA to declare what constitutes "unfair methods of competition and unfair or deceptive acts or practices with regard to the collection of debts." 73 P.S. §2270.2. The relevant portions according to the authority of Pennsylvania's statute are as follows:

"(b) By creditors.—*With respect to debt collection activities of creditors* in this Commonwealth, it shall constitute an unfair or deceptive debt collection act or practice under this act if a creditor violates any of the following provisions:

"(3) Except as provided in paragraph (1), without the prior consent of the consumer given directly to the creditor or the express permission of a court of competent jurisdiction or as reasonably necessary to effectuate a post-judgment judicial remedy, a creditor may not communicate, *in connection with the collection of any debt,* with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, a debt collector, the attorney of the debt collector or the attorney of the creditor.

"(4) A creditor may not engage in any conduct the natural consequence of which is to harass, oppress or abuse any person *in connection with the collection of a debt.* Without limiting the general application of the

foregoing, the following is a violation of this paragraph:

"(iii) The publication of a list of consumers who allegedly refused to pay debts, except to a consumer reporting agency. . . ." FCEUA, section 2270.4(b)(3) and (4) (iii). (emphasis added)

As in the federal statute, Pennsylvania's prohibitions are triggered by communication or other practices, such as publishing lists of delinquent debtors, *only* if this activity is done "in connection with the collection of any debt." Once again, the release of information pursuant to the Right-to-Know statute is not in conflict with Pennsylvania's consumer protection statute which is designed to prohibit and curb deceptive unfair debt collection practices. The authority clearly would not be attempting to subvert either the Pennsylvania or Federal consumer protection statutes, nor would it in fact be violating such statutes, by releasing information pursuant to the public's right to access its financial records. Moreover, the fact that the information that it releases may ultimately be published by the requestor is not a factor in the foregoing analysis and may not be a reason to deny disclosure.

Accordingly, it is the holding of this court that there is no ambiguity in either the FDCPA and the FCEUA as they relate to disclosure of information pursuant to the Pennsylvania Right-to-Know Law. The release of the overdue account information by the authority does not violate the plain language and/or the legislative intent underlying both remedial statutes. The court need not therefore look beyond the plain meaning of these statutes.

In conclusion, the authority must disclose the delinquent account records requested by the respondent.

Hence this order:

## ORDER

And now, January 26, 2010, it is hereby ordered and decreed that the appeal of the City of Sharon Sanitary Authority is denied. It is further ordered that the City of Sharon Sanitary Authority shall release the requested information to the respondent, Courtney L. Anderson, within 30 days of the date of this order.