J-A05034-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF T.J.W. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: W.M. AKA T.W., | : | |
| MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3123 EDA 2017 |

Appeal from the Decree August 17, 2017
in the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  No. 2017-A0058

| | | |
|---|---|---|
| IN RE: ADOPTION OF T.A.W. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: W.M. AKA T.W., | : | |
| MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3124 EDA 2017 |

Appeal from the Decree August 17, 2017
in the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  No. 2017-A0059

| | | |
|---|---|---|
| IN RE: ADOPTION OF T.L.W. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: W.M. AKA T.W., | : | |
| MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3126 EDA 2017 |

Appeal from the Decree August 17, 2017
in the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  No. 2017-A0060

| IN RE: ADOPTION OF C.M.M. | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: W.M. AKA T.W., | : | |
| MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3127 EDA 2017 |

Appeal from the Decree August 17, 2017
in the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  No. 2017-A0061

| IN RE: ADOPTION OF E.L.W. | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: W.M. AKA T.W., | : | |
| MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3128 EDA 2017 |

Appeal from the Decree August 17, 2017
in the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  No. 2017-A0062


BEFORE:   DUBOW, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED APRIL 16, 2018**

Appellant, W.M. a/k/a T.W. ("Mother"), files these consolidated appeals

from the decrees dated August 14, 2017, and entered August 17, 2017,[1] in

---

[*] Former Justice specially assigned to the Superior Court.

[1] The subject decree was dated August 14, 2017.  However, the clerk did not provide notice pursuant to Pa.R.C.P. 236(b) until August 17, 2017.  Our appellate rules designate the date of entry of an order as "the day on which the clerk makes the notation in the docket that notice of entry of the order

the Montgomery County Court of Common Pleas, granting the petitions of Montgomery County Office of Children and Youth ("OCY") and involuntarily terminating her parental rights to her five dependent daughters, T.J.W., born in February 2005, T.A.W., born in August 2007, T.L.W., born in February 2011, C.M.M., born in July 1999, and E.L.W., born in February 2013 (collectively, the "Children"), pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (8), and (b).[2, 3] After review, we affirm the trial court's decrees.

The record reveals the following relevant factual and procedural history: OCY had contact with the family in August 2013 resulting from a referral due to housing instability, truancy issues, and immunization delays. The case was closed in October 2013. Notes of Testimony ("N.T."), 8/14/17, at 10-11.[4]

Thereafter, OCY received a new referral in December 2014, again due to truancy and housing issues. *Id.* at 11; *see also* OCY Exhibits 1-5. The

---

has been given as required by Pa.R.C.P. 236(b)." Pa.R.A.P. 108(b). Further, our Supreme Court has held that "an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given." *Frazier v. City of Philadelphia*, 557 Pa. 618, 621, 735 A.2d 113, 115 (1999).

[2] The Children's father is deceased. Notes of Testimony ("N.T."), 8/14/17, at 22; N.T., 6/22/17, at 4-5; *see also* OCY Exhibits 1-5.

[3] While Mother suggests she is additionally appealing from the orders changing the Children's permanency goal to adoption, Mother fails to include the docket numbers associated with the goal change on her notices of appeal; therefore, we only address the termination of Mother's parental rights.

[4] This Court uses the top-most page numbers prefaced by the lead docket number and Notes of Testimony which appear to include the cover sheet.

three oldest subject children were adjudicated dependent on December 30, 2014, with custody remaining with Mother.[5]  **See** OCY Exhibits 1, 4, 5.  OCY sought for Mother to attain housing stability, secure the Children's attendance at school and update and maintain the Children's medical care, including immunizations, well-checks, and dental care.  **Id.** at 12.  Services were provided to help the family; however, Mother was "not [cooperative] to the fullest extent."[6]  **Id.** at 13.

OCY petitioned for custody of the three oldest subject children in May 2015 due to continued concerns related to truancy, housing, and medical care. **Id.** at 13-14.  OCY additionally began to have concerns regarding Mother's prescription drug abuse.  **Id.** at 15.  On May 5, 2015, after a shelter care hearing, custody of the Children remained with Mother.  **Id.** at 16; **see also** OCY Exhibits 1, 4, 5.

On December 8, 2015, OCY sought custody of all five children due to continued concerns related to truancy, unstable housing, medical care, prescription drug abuse, and minimal compliance with Family Service Plan

---

[5] Two additional children who are not involved in this appeal also were adjudicated dependent at this time.  See OCY Exhibit 1, 4, 5.

[6] OCY caseworker, Angelena Krebsbach, testified that JusticeWorks JustCare case management services were implemented.  N.T., 8/14/17, at 13.  In addition, funding resources for housing were made available to Mother.  **Id.** at 15-16.  Ms. Krebsbach further reported that two referrals for Time Limited Family Reunification services were made in 2016, but closed due to Mother's noncompliance.  **Id.** at 20-21.

("FSP") goals.[7]  *Id.* at 16-17.  After a shelter care hearing, the Children were placed with Paternal Aunt, where they have remained since December 8, 2015.  *Id.* at 17; *see also* OCY Exhibits 1-5.  The two youngest children were subsequently adjudicated dependent on December 15, 2015.  *See* OCY Exhibits 2, 3.

OCY filed petitions to terminate Mother's parental rights on April 19, 2017.  The trial court held a hearing on August 14, 2017.[8]  At the hearing, OCY presented the testimony of Angelena Krebsbach, OCY caseworker.  OCY further offered Exhibits 1 through 19, which were admitted without objection.  N.T., 8/14/17, at 6, 8, 10, 18-19, 22-23, 30-31, 88-90.  In addition, Mother, who was present and represented by counsel,[9] testified on her own behalf and presented the testimony of an older child not involved in this matter, L.S.[10]

---

[7] Mother's FSP goals, which remained similar throughout the case, were as follows:  maintain financial needs for daily living; obtain and maintain housing; attend and follow through with the Children's medical appointments; maintain a relationship with the Children; obtain mental health and drug and alcohol evaluations and follow through with the recommendations.  *Id.* at 19-20; *see also* OCY Exhibits 6-11.

[8] A hearing in the matter had commenced on June 22, 2017, at which time the court granted the request of Mother's counsel in the dependency matters for removal from the termination matters.  The hearing was then continued to August 14, 2017, and new counsel was appointed.

[9] Mother was present despite being incarcerated at the time of the hearing. It is not apparent from the record whether Mother has since been released from her incarceration.

[10] Mother has six other children, aside from the five who are the subject of the instant appeal.  N.T., 8/14/17, at 91.

In addition, the Children were represented by a Child Advocate during this proceeding, who participated in the questioning and presented an exhibit.[11]

By decrees dated August 14, 2017, and entered on August 17, 2017, the trial court involuntarily terminated the parental rights of Mother to the Children pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (8), and (b).[12] On September 12, 2017, Mother, through her trial counsel, filed notices of appeal as well as a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), which this Court consolidated *sua sponte* on

---

[11] The Child Advocate, Arona Gur, Esquire, argued in favor of termination of Mother's parental rights at the close of the hearing, *id.* at 123-25, and filed a brief in support of this position. OCY joined in this brief and did not file a separate brief on appeal. *See* Letter, 12/22/17. Upon review, it appears that Ms. Gur was the Guardian *ad litem* ("GAL"), and then, on June 22, 2017, also entered her appearance as legal counsel for the Children. N.T., 6/22/17, at 2, 9. While our Supreme Court held that Section 2313(a) requires courts to appoint counsel to represent the legal interests of any child involved in a contested involuntarily termination proceeding, *see In re Adoption of L.B.M.*, ___ Pa. ____, 161 A.3d 172 (2017), we have held that courts need not appoint a separate attorney to represent a child's legal interests, so long as the child's GAL was an attorney and the child's legal and best interests do not appear to be in conflict. *see In re D.L.B.*, 166 A.3d 322, 329 (Pa.Super. 2017) ("As our decision discusses, Child's best interests and legal interests were unquestionably well represented by Attorney Rowles in this case and such interests were never in conflict. Accordingly, we decline Mother's request to remand this case for the appointment of additional counsel for Child."). Here, the record fails to suggest any conflict between the Children's legal interests and best interests or that Ms. Gur did not represent both interests adequately.

[12] These decrees memorialized the decision the court placed on the record at the conclusion of the hearing. N.T., 8/14/17, at 150-51.

October 23, 2017. The trial court issued a Rule 1925(a) Opinion dated September 21, 2017, and entered September 25, 2017, noting that the rationale for the orders in question can be found in the Notes of Testimony, the relevant pages of which were attached.[13]

On appeal, Mother raises the following Statement of Question Involved:

> In its decision to grant OCY's respective Petitions to Terminate Parental rights (Involuntary) and requests to change the permanency goals to adoption, did the trial court commit an error of law by interpreting the operative statute, 23 Pa.C.S.[A.] § 2511 ("Grounds for involuntary termination"), as mandatory instead of permissive?

Mother's Brief at 4.

"[T]he interpretation and application of a statute is a question of law that compels plenary review to determine whether the court committed an error of law." **Wilson v. Transport Ins. Co.**, 889 A.2d 563, 570 (Pa.Super. 2005). "As with all questions of law, the appellate standard of review is *de*

---

[13] As the court explained,

> Now, in this matter I have listened very carefully to all of the testimony in this matter. I am going to issue my opinion from the bench.

> For the record, the following explanation and the decision will serve as my opinion in this matter. This verbal statement that I am putting on the record now is designed to satisfy the Pennsylvania Rules of Appellate Procedure 1925(a).

Trial Court Opinion ("T.C.O."), 9/25/17, at 2-3.

*novo* and the appellate scope of review is plenary." ***In re Wilson****,* 879 A.2d
199, 214 (Pa.Super. 2005) (*en banc*).

On the topic of statutory interpretation, this Court has stated:

[We] are constrained by the rules of statutory interpretation, particularly as found in the Statutory Construction Act. 1 Pa.C.S.A. §§ 1501-1991. The goal in interpreting any statute is to ascertain and effectuate the intention of the General Assembly. Our Supreme Court has stated that the plain language of a statute is in general the best indication of the legislative intent that gave rise to the statute. When the language is clear, explicit, and free from any ambiguity, we discern intent from the language alone, and not from the arguments based on legislative history or "spirit" of the statute. We must construe words and phrases in the statute according to rules of grammar and according to their common and approved usage. We also must construe a statute in such a way as to give effect to all its provisions, if possible, thereby avoiding the need to label any provision as mere surplusage.

***Cimino v. Valley Family Medicine****,* 912 A.2d 851, 853 (Pa.Super. 2006),
appeal denied, 591 Pa. 731, 921 A.2d 494 (2007) (quoting ***Weiner v. Fisher****,*
871 A.2d 1283, 1285-86 (Pa.Super. 2005)). ***See also*** 1 Pa.C.S.A. § 1921(b).
Under Section 1921(c), the court resorts to considerations of "purpose" and
"object" of the legislature when the words of a statute are not explicit.
***Sternlicht v. Sternlicht****,* 583 Pa. 149, 158, 876 A.2d 904, 909 (2005)
(referring to consideration of matters such as: (1) occasion and necessity for
statute; (2) circumstances under which it was enacted; (3) mischief to be
remedied; (4) object to be attained; (5) former law, if any, including other
statutes upon same or similar subjects; (6) consequences of particular
interpretation; (7) contemporaneous legislative history; (8) legislative and
administrative interpretations of such statute). Finally,

[I]t is presumed that the legislature did not intend an absurd or unreasonable result. In this regard, we "…are permitted to examine the practical consequences of a particular interpretation."

***Commonwealth v. Diakatos***, 708 A.2d 510, 512 (Pa.Super. 1998) (citations omitted).

In the case *sub judice*, Mother asserts that the trial court erred in terminating her parental rights to the subject children, arguing that the subsection that sets forth the grounds for termination, Section 2511(a), is "discretionary." Mother's Brief at 12. Mother further maintains that the permissive nature of Section 2511(a) is supported by the mandatory nature of Section 2511(b). ***Id.*** at 13. She asserts that the trial court misinterpreted the statute as requiring it to terminate her parental rights under Section 2511(a) and supports her argument with the recent Supreme Court case ***A. Scott Enterprises, Inc. v. City of Allentown***, 636 Pa. 249, 142 A.3d 779 (2016). However, that case involved the Procurement Code, 62 Pa.C.S.A. § 3935 and offered no interpretation of the Adoption Act.

The termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, the relevant part of which provides:

**§ 2511.  Grounds for involuntary termination.**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . .

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the

developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a) and (b).

This statute requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child, and as to its application, we have stated the following:

Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted).

We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*) (quoting *Matter*

*of Adoption of Charles E.D.M., II*, 550 Pa. 595, 601, 708 A.2d 88, 91 (1998)).  Our Court made clear in *In re Adoption of A.M.B.*, 812 A.2d 659, 671 (Pa.Super. 2002), that the trial court retains the discretion to review the elements of the termination statute, and to determine whether the evidence supports the termination of the parent's parental rights.  Hence, there is no abuse of discretion on the part of the trial court if clear and convincing evidence to support grounds for termination pursuant to subsection (a) and such termination favors the child's needs and welfare pursuant to subsection (b).  We, therefore, proceed to examine the trial court's rationale for its termination of Mother's parental rights.

In matters involving involuntary termination of parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, [616 Pa. 309, 325, 47 A.3d 817, 826 (2012)].  "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.*  "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.*  The trial court's decision, however, should not be reversed merely because the record would support a different result. *Id.* at [325-26, 47 A.3d at] 827.  We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *See In re R.J.T.*, [608 Pa. 9, 26-27, 9 A.3d 1179, 1190 (2010)].

*In re T.S.M.*, 620 Pa. 602, 628, 71 A.3d 251, 267 (2013).  "The trial court is free to believe all, part, or none of the evidence presented and is likewise free

to make all credibility determinations and resolve conflicts in the evidence."

***In re M.G. & J.G.***, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted).

In the instant matter, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (8), and (b).  This Court has long held that, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b).  ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*).   Here, we analyze the court's termination decrees pursuant to subsections 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . .
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which

- 12 -

> are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), and (b).

We first consider whether the trial court abused its discretion by terminating Mother's parental rights pursuant to Section 2511(a)(2).

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met:  (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003) (citation omitted).  "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct.   To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties."  *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa.Super. 2015) (quoting *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002)).   "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. . . .   [A] parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous."  *In re A.L.D.*, 797 A.2d at 340 (internal quotation marks and citations omitted).

In *In re Adoption of S.P.*, 616 Pa. 309, 47 A.3d 817 (2012), our Supreme Court, in addressing Section 2511(a)(2), held:

[I]ncarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied.

*Id.* at 328-29, 47 A.3d at 828; *see also In re D.C.D.*, 629 Pa. 325, 346-47, 105 A.3d 662, 675 (2014) (holding that incarceration prior to the child's birth and until the child was at least age seven renders family reunification an unrealistic goal and the court was within its discretion to terminate parental rights "notwithstanding the agency's failure" to follow court's initial directive that reunification efforts be made). The Court in *S.P.* further stated:

[W]e now definitively hold that incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S.[A.] § 2511(a)(2). *See e.g. Adoption of J.J.,* [511 Pa. 590, 605,] 515 A.2d [883, 891 (1986)] ("[A] parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties."); [*In re*] *E.A.P.,* 944 A.2d [79, 85 (Pa.Super. 2008)](holding termination under § 2511(a)(2) was supported by mother's repeated incarcerations and failure to be present for child, which caused child to be without essential care and subsistence for most of her life and which cannot be remedied despite mother's compliance with various prison programs).

*In re Adoption of S.P.*, 616 Pa. at 32, 47 A.3d at 830 (footnote omitted).

In finding grounds for termination of Mother's parental rights pursuant to Section 2511(a)(2), the trial court stated the following:

I find that this case basically centered on the children's lack of stable housing, their lack of adequate medical care, including dental care, and the issue of truancy.

I also find, as was admitted by mother, that substances played a part, controlled substances played a part in this case. Admittedly birth mother has an issue with controlled substances, so that is a finding in this matter.

This [c]ourt heard a lot of credible testimony about birth mother's relationship with [OCY], namely the OCY caseworker, and this [c]ourt finds that the caseworker and birth mother didn't get along. Apparently they did not see eye to eye on hardly anything, including the Family Service Plan.

This [c]ourt finds little progress, no progress in fact, with regard to the six Family Service Plans that were offered to birth mother, and no progress whatsoever with the Time Limited Family Reunification services that mother was given twice by OCY.

These are all lifelines. They are given to people who are sinking, and whether or not you grab onto these lifelines weighs a lot in this [c]ourt's decision regarding terminating parental rights, because they are lifelines. They are services provided by taxpayers' dollars to help families going through a crisis. It is not a means of interference. They are there to help.

This [c]ourt finds that mother, birth mother, refused that help and failed to cooperate.

This [c]ourt received evidence regarding the level of that cooperation[,] including the failure to follow through on recommendations from the drug and alcohol evaluation[,] as well as recommendations from the numerous hospitalizations that mother, birth mother, went through.

. . .

This [c]ourt also notes in accordance with birth mother's testimony that she was in denial, and so this [c]ourt finds that birth mother was incapable and suffering an incapacity, namely this [c]ourt heard testimony regarding a depression that birth mother suffered as one of the reasons for her incapacity and her inability to parent the children properly.

By proper parenting this [c]ourt is specifically addressing the lack of adequate medical care, as well as the truancy issue

and the failure to make sure the kids got an education in preparation for their futures.

This [c]ourt also finds that mother's, birth mother's, response to her situation, probably as a result of the depression, resulted in behavior that subsequently placed her in prison. So we have the issue of incarceration compounding the problems before this [c]ourt.

I did not hear a possible time frame related to this incarceration, however, it appears that[,] even with birth mother's cooperation with state authorities, there will be a considerable amount of supervision, and this [c]ourt has an extreme concern for future violations of that supervision.

T.C.O. at 7-10. The court continued:

So this [c]ourt heard testimony and makes the findings that mother, birth mother, had numerous opportunities to seek help, to get help, and chose not to. And whether or not this is in the throes of depression or in the throes of substance abuse, that direction, that guidance, that place, that treatment center was still there and still available.

I am going to very briefly talk about the drug use. I have talked about it a little bit, but this [c]ourt received evidence, I think it was Exhibit No. 13, of drug testing where there were positive tests for ten urine screens and then birth mother failed to show up for seven of the screenings, and then there was one where birth mother couldn't produce anything, but admitted to using drugs. So birth mother's continued drug use and her resulting incarcerations make it impossible for her to provide that parental care, control, housing, nutrition, comfort and support necessary for the children's physical and mental well-being.

I find that OCY has presented clear and convincing evidence that birth mother's drug use creates a parental incapacity and has resulted in the neglect of parental duties and an inability to provide a safe and secure home for the children. Moreover, this drug use is a condition that led to the removal of the children from the parent's care, and I find that OCY has demonstrated that this condition cannot and will not be remedied by birth mother within a reasonable period of time.

> Now, while birth mother has been clean and sober for the brief period of time while she has been incarcerated, she has not demonstrated to this [c]ourt a sufficient understanding of her role related to this drug use and her parental supervision of her children.

T.C.O. at 14-15. A review of the record supports the trial court's determination of a basis for termination under Section 2511(a)(2). As we discern no abuse of discretion or error of law, we do not disturb the court's findings.

The record reveals parental incapacity resulting from substance abuse and mental health issues, as well as incarceration. While Mother was hospitalized on numerous occasions for mental health treatment, OCY caseworker, Angelena Krebsbach, testified that she did not receive documentation of Mother's successful completion of mental health treatment recommendations. N.T., 8/14/17, at 25-27, 72. Likewise, Ms. Krebsbach indicated that Mother did not follow through with regard to drug and alcohol treatment recommendations. *Id.* at 29, 73-74. Although Mother testified to sixty-five days of sobriety, *id.* at 95, as the trial court noted, this was the amount of time Mother had most recently been incarcerated. *Id.* at 133-34.

Of significance, Mother had multiple incarcerations and her current release date was unknown at the time of the hearing. *Id.* at 35-36; *see also* OCY Exhibits 16-19. As admitted by Mother, any release would likely to be followed by a lengthy period of probation. *Id.* at 110. In response to inquiry regarding her knowledge of her release date, Mother stated,

I do, but I don't. It's kind of difficult. I am working with the Attorney General's Office and they have been with me to every court date. Even though they charged me, they have been with me. They made my bail unsecured except for $10 until my Gagnon hearing, where my probation officer lifts my detainer, so they can seek lengthy probation and not jail time, along with rehabilitation.

*Id.* Further, it is speculative whether Mother will then, or ever, be in a position to care for the Children. Ms. Krebsbach testified that Mother has not demonstrated an ability to meet the needs of the Children and did not alleviate the problems that caused the Children to come into care, including those of housing, financial stability, mental health, and drug and alcohol. *Id.* at 39. This prospect is simply unacceptable for the Children, who had already been in the custody of OCY for twenty months as of the time of the hearing. As this Court has stated, "[A] child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa.Super. 2006).

Hence, the record substantiates the conclusion that Mother's repeated and continued incapacity, abuse, neglect, or refusal has caused the Children to be without essential parental control or subsistence necessary for her physical and mental well-being. *See In re Adoption of M.E.P.*, 825 A.2d at 1272. Moreover, Mother cannot or will not remedy this situation. *See id.* As noted above, in order to affirm a termination of parental rights, we need only

agree with the trial court as to any one subsection of Section 2511(a) before assessing the determination under Section 2511(b), and we, therefore, need not address any further subsections of Section 2511(a). *In re B.L.W.*, 843 A.2d at 384.

We next determine whether termination was proper under Section 2511(b). Our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.[A.] § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa.Super. 2012). In *In re E.M. [a/k/a E.W.C. & L.M. a/k/a L.C., Jr.]*, [533 Pa. 115, 123, 620 A.2d 481, 485 (1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791. However, as discussed below, evaluation of a child's bonds is not always an easy task.

*In re T.S.M.*, 620 Pa. at 628-29, 71 A.3d at 267. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa.Super. 2008) (citation omitted).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as

- 19 -

well.    Additionally,  Section  2511(b)  does  not  require  a  formal  bonding evaluation." *In re Z.P.*, 994 A.2d at 1121 (internal citations omitted).

Moreover,

[w]hile a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. . . .

*In re Adoption of C.D.R.*, 111 A.3d at 1219 (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011)) (quotation marks and citations omitted).

In  finding  that  the  Children's  emotional  needs  and  welfare  favor termination pursuant to Section 2511(b), the trial court reasoned as follows:

In this case the testimony clearly established that although there is affection and birth mother cares for each of her children, she has not maintained sufficient and consistent contact and there is minimal bond between the child and birth mother.

This [c]ourt considered in making this statement birth mother's attendance at visits, the number of missed visits, and mother's lack of interest in even seeking the dates of the visits. This [c]ourt also considered references by the caseworker, Ms. Krebsbach's testimony, regarding the issue of bond and this [c]ourt found that testimony to be credible.

In this case the birth mother has not provided a home, has not met her children's needs and has not maintained a consistent and strong parent-child relationship.  The parent's desire to start over at this time is insufficient to meet the children's needs for a consistent and reliable affection and responsibility.

I conclude that the emotional needs and welfare of the children at issue can best be met by termination of the parental rights of birth mother and that the children will not suffer a detriment as a result of termination of the parental rights of birth mother.

In this case I find that the parental bond between birth mother and each of her children is minimal. By contrast, I find, based on the testimony of the caseworker, that the bond between the foster parent and the children has been described as loving and supportive, and I find that testimony to be credible.

Therefore, I find from the evidence and testimony presented before me today that termination of birth mother's rights best serves the needs and welfare of each of the children at issue, and termination of the parental rights of birth mother will not irreparably harm any of the children.

T.C.O. at 26-27.

Upon review, we again discern no abuse of discretion. The record supports the trial court's finding that the Children's developmental, physical and emotional needs and welfare favor termination of Mother's parental rights pursuant to Section 2511(b). There was sufficient evidence to allow the trial court to make a determination that the Children's bond with Mother is minimal and that they exhibit a loving and supportive bond with Paternal Aunt.

Critically, OCY caseworker, Angelena Krebsbach, testified as to the lack of maintenance of a bond between Mother and the Children, who had been placed in and out of Mother's care for twenty months at the time of the hearing. Ms. Krebsbach stated, "I mean, mom loves her children and I know her children love her. There is no denying that. But I think at this time there isn't that strong bond anymore." N.T. at 34. Ms. Krebsbach attributed the absence of a continued or sustained strong bond to "the lack of maintaining

the relationship with them." *Id.* In describing Mother's visitation with the Children, she indicated that Mother attended only seven of twenty-five offered visits and noted that Mother's visitation was interrupted by extended periods of no visitation. *Id.* at 32-33; *see also* OCY Exhibit 12. Ms. Krebsbach explained,

> Well, after they were placed in December 2015, the first time [Mother] actually ended up seeing the girls was four months later, after they were placed. And then there were periods where she didn't see them for five months, three months, two months time span. And then as far as from now she hasn't seen them for three months. The last time she visited was three months ago.

*Id.* at 32-33. Further, Mother's telephone contact with the Children was terminated approximately a year prior to the hearing due to inappropriate conversations. *Id.* at 35. While Mother was advised she could write letters, Ms. Krebsbach recounted that Mother only wrote two letters since that time. *Id.*

Moreover, and more importantly, Ms. Krebsbach expressed that the Children are bonded to and thriving with Paternal Aunt, in whose care they have remained since being placed. "[T]hey have done really well in her care. It is evidenced that they have a strong bond with their aunt. They definitely look up to her for the love, guidance. And they like living with her." *Id.* at 36. Ms. Krebsbach further noted that the Children are "happy" and "comfortable." *Id.* at 38. As a result, Ms. Krebsbach opined that there would not be any negative impact if parental rights were terminated. *Id.* When asked to explain why, she stated, "I think because the relationship hasn't been

- 22 -

maintained; there isn't a strong bond anymore. They are stable where they are at." *Id.* Ms. Krebsbach confirmed that Paternal Aunt is an adoptive resource, *id.* at 37, and offered that adoption was in the Children's best interest because "adoption is the most permanent option for them, so I think it is in their best interest for them to be adopted and they want to be adopted," *id.* at 38-39.

Thus, as confirmed by the record, termination of Mother's parental rights serves the Children's developmental, physical and emotional needs and welfare and was proper pursuant to Section 2511(b). While Mother may profess to love the Children, a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. *In re Z.P.*, 994 A.2d at 1121. At the time of the hearing, the Children had already been in care twenty months, and are entitled permanency and stability. As we stated, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *Id.* at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa.Super. 2004) (citation omitted), appeal denied, 582 Pa. 718, 872 A.2d 1200.

Accordingly, based upon our review of the record, we find no abuse of discretion and conclude that the trial court appropriately terminated Mother's parental rights under 23 Pa.C.S.A. § 2511(a)(2) and (b).

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/16/18