J-S18037-20

2020 PA Super 159

| | | |
|---|---|---|
| C.L. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| M.P. | : | |
| | : | |
| Appellant | : | No. 1958 MDA 2019 |

Appeal from the Order Entered November 15, 2019
In the Court of Common Pleas of Lackawanna County Civil Division at
No(s): 2019-FC-41210

| | | |
|---|---|---|
| C.L. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| M.P. | : | |
| | : | |
| Appellant | : | No. 1959 MDA 2019 |

Appeal from the Order Entered October 29, 2019
In the Court of Common Pleas of Lackawanna County Civil Division at
No(s): 2019-FC-41210

BEFORE:   KUNSELMAN, J., KING, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                    **FILED JULY 08, 2020**

Appellant, M.P. ("Mother"), files these consolidated appeals from the
trial court's October 29, 2019, order appointing a guardian ad litem ("GAL")
pursuant to Pa.R.C.P. 1915.11-2, and including access to mental health

_____

[*] Former Justice specially assigned to the Superior Court.

records, as well as the trial court's November 15, 2019,[1] order granting in part, and denying in part, Mother's Petition for Emergency Special Relief Seeking Reconsideration, providing the GAL access to mental health records from the last three years for both Mother and Appellee, C.L. ("Father"), pursuant to 23 Pa.C.S. § 5334, with restrictions as to disclosure and dissemination by the GAL, as well as the ability to object to the GAL's testimony and/or report or recommendation. After review, we affirm.

The trial court has set forth the relevant procedural history as follows:

> On August 23, 2019, [Father] filed a Petition for Custody and a Petition for Emergency Special Relief in Custody *pro se*. [Father] alleged in both petitions that "[t]he mother of our child, [Mother] has become increasingly prone to erratic and hostile outbursts toward me in front of our child." [Father] also alleged that "[Mother] had an extensive mental health history . . . and has refused to seek any further treatment." Additionally, [Father] alleged that [Mother] "refused a suggested consultation . . . for post-partum depression/psychosis." Further, [Mother] "has been regularly dissociating to the point of forgetting big stretches at a time or where she is. . ." according to [Father]'s averments. [Father]'s Petition for Emergency Special Relief in Custody was granted *ex parte* . . . and scheduled for a hearing. Under [the]

_____

[1] While the docket reflects a filed date of October 29, 2019, and November 15, 2019, there is no notation on the docket that notice was given and that the orders were entered for purposes of Pa.R.C.P. 236(b). ***See Frazier v. City of Philadelphia***, 557 Pa. 618, 621, 735 A.2d 113, 115 (1999) (holding that "an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given"); Pa.R.A.P. 108(a) (entry of an order is designated as "the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.C.P. 236(b)"). Thus, the orders were not entered and the appeal period not triggered. Although we consider the matter on the merits, we caution the Court of Common Pleas of Lackawanna County as to compliance with the rules with regard to the entry of orders.

Order, [Father] enjoyed temporary sole physical and legal custody of [Child].

Through counsel, [Mother] filed a Petition for Emergency Special Relief in Custody on August 27, 2019. [Mother] likewise alleged serious concerns regarding [Father]'s mental health and alleged physical, mental, and emotional abuse. Among [Mother]'s allegations of abuse were that: 1) [Father] was emotionally controlling and manipulative regarding who could see [Child]; 2) [Father] coerced [Mother] into severing ties with her parents; 3) [Father] talked to [Mother] in a degrading and manipulative manner in front of [Child]; 4) [Father] threatened to leave [Mother] and take [Child] as punishment for visiting her family; and 5) [Father] locked [Mother] out of the marital home and attempted to have her committed.

[Mother] also alleged that [Father] suffered from mental health conditions and was playing psychiatrist or gaslighting her. For example, [Mother] alleged that [Father] diagnosed [Mother] with "dissociative identity disorder" and tried to convince [Mother] that she suffered from this condition. Moreover, [Mother] put forth allegations that [Father] suffers from schizotypal personality disorder and was not taking medication or treating. [Father]'s disorder manifested itself in bizarre alleged behavior, including telling [Mother] that Maternal Grandfather "pimped [Mother] out to his friends while she was unconscious[,]" and that [Father] was jealous of the sexual relationship [Mother] enjoyed with Maternal Grandfather according to [Mother]'s petition. [Mother] further alleged at one point that [Father] threw himself on the ground and ripped at his clothing over a dispute as to whether Maternal Grandparents could see [Child] and carved the letter M into his arm for "no apparent reason" while [Mother] was otherwise caring for [Child]. "All of the above behaviors exhibited by [Father,]" [Mother] alleged, "call into question his mental health and his ability to adequately and safely care for the minor child."

[The court] denied [Mother]'s Petition for Emergency Special Relief in Custody *ex parte* and the matters were consolidated for hearing before the [c]ourt. The parties, however, agreed to allow [Mother] periods of partial physical custody with no overnight periods pending the hearing on the petitions. The parties agreed that [Child] should have no contact with Maternal Grandparents.

Trial Court Opinion ("T.C.O."), 12/17/19, at 2-3 (citations to the record omitted).

Hearings were held on the parties' cross-petitions on September 10, 2019,[2] and October 28, 2019. Both Mother and Father were present and represented by counsel. Father testified on his own behalf and presented the testimony of his sister, as well as that of Mother, as of cross-examination. Additionally, Mother testified on her own behalf.

> [Mother]'s testimony was not concluded. After the October 28, 2019[,] hearing, [the court] appointed Andrew Phillips, Esq.[,] as Guardian ad Litem ("GAL") of [Child] pursuant to 23 Pa.C.S. § 5334 due to the high conflict in the family and the sensitive nature of the allegations against each party and others associated. The Order appointing the GAL was a form order pursuant to Rules 1915.11-2 and 1915.21 and contained language that allowed the GAL to access both parties' psychological or psychiatric charts, including evaluations, progress notes, test evaluations, and discharge summaries.

> [Mother] then filed a Petition for Emergency Special Relief Seeking Reconsideration to Entry of the October 29, 2019[,] Order Appointing a Guardian ad Litem in the Nature of a Motion for the Court to Strike Language from Said Order Pertaining to Mother's Release of Mental Health Records & Mental Health Treatment Records to the Guardian ad Litem & Motion to Strike Mother's 10/28/2019 Mental Health Testimony from the Record ("Petition for Reconsideration") citing the Mental Health Procedures Act, the Psychologist-Patient Privilege, and relevant case law. Following

---

[2] We observe that the cover sheet for the Notes of Testimony of this hearing indicates a date of August 15, 2019. An amended cover sheet reflecting a date of September 10, 2019, is contained in the certified record. We further note that Plaintiff's (Father's) Exhibit 1 was not included as part of the certified record, or the reproduced record. Nevertheless, the exhibit was summarized on the record. *See* Notes of Testimony ("N.T."), 9/10/19, at 36.

oral argument on [Mother]'s Petition for Reconsideration,[3] [the court] issued two Orders on November 15, 2019[,] granting [Mother]'s Petition for Reconsideration in part and sealing this docket. Specifically, [the court] limited the Guardian ad Litem's access to three years of both parties' mental health records and ordered non-disclosure of such records, tailoring the Order to the testimony in the case. [The court] also directed that [Father] and [Mother] submit to mental health evaluations and/or testing through one of two different providers pursuant to Pennsylvania Rule of Civil Procedure 1915.8. In that Order, no limits were placed on the evaluator's ability to obtain prior mental health treatment records of the parties. [The court] later issued Orders in compliance with Pa.R.Civ.P. 1915.18, limiting the parties' access to the evaluator's file without authorization from [the court].[4]

T.C.O. at 9-10 (citations to the record omitted) (footnotes added).

Thereafter, Mother, through counsel, filed timely notices of appeal on November 25, 2019, along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), with respect to the October 29, 2019, order appointing a GAL pursuant to Pa.R.C.P. 1915.11-2 and allowing access to mental health records, and the November 15, 2019, order granting in part and denying in part Mother's Petition for Emergency

_____

[3] While the notes of testimony from this hearing are not included as part of the certified record, they are included as part of the reproduced record. As their veracity is not in dispute, we rely on the copy contained within the Reproduced Record. **See Commonwealth v. Barnett**, 121 A.3d 534, 544 n.3 (Pa.Super. 2015) ("While this Court generally may only consider facts that have been duly certified in the record, where the accuracy of a document is undisputed and contained in the certified record, we may consider it.") (citations omitted)).

[4] Mother does not challenge the order as it relates to the psychological evaluations and/or testing.

Special Relief Seeking Reconsideration and providing the GAL access to mental health records from the last three years for both Mother and Father.[5, 6] Pursuant to order of December 2, 2019, Mother was granted leave to amend her concise statement and such amended concise statement was treated as timely filed.[7, 8] This Court consolidated Mother's appeals *sua sponte* on January 27, 2020.

On appeal, Mother raises the following issues for our review:

1. Did the trial court err or abuse its discretion in directing disclosure to the Guardian ad Litem, over the objection of counsel, of confidential mental health records, based upon 23 Pa.C.S.[] § 5334, where the Mental Health Procedures Act [("MHPA")], 50 P.S. § 7111(a), controls the disclosure of such records and supersedes any other statute to the contrary?

Mother's Brief at 2 (suggested answer omitted).[9]

---

[5] As indicated, this order additionally imposed restrictions as to disclosure and dissemination by the GAL, and the ability to object to the GAL's testimony and/or report or recommendation.

[6] We find such orders are appealable as collateral orders pursuant to Pa.R.A.P. 313. **See M.M. v. L.M.**, 55 A.3d 1167, 1168 (Pa.Super. 2012).

[7] Mother's Amended Concise Statement made corrections as to citations. **See** Amended Concise Statement of Errors Complained of on Appeal Pursuant to Pa.R.A.P. 1925, 11/27/19.

[8] Upon motion of Mother, pursuant to order of December 3, 2019, the orders on appeal were stayed by the trial court. **See** Order, 12/3/19.

[9] Mother failed to preserve a claim as to the striking of her testimony from October 28, 2019, pertaining to confidential mental health information, as she failed to raise such a challenge in the statement of questions involved section of her brief or present any argument and/or discussion with regard thereto.

Initially, for background purposes, we note that in any custody action brought under the Child Custody Act, ("the Act"), 23 Pa.C.S. §§ 5321-5340, the paramount concern is the best interests of the child. **See** 23 Pa.C.S. §§ 5328, 5338. In fashioning a custody award, the trial court must consider the following best interest factors set forth in Section 5328(a), which provides as follows:

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

---

**See In re M.Z.T.M.W.**, 163 A.3d 462, 465-66 (Pa.Super. 2017); **Krebs v. United Refining Co.**, 893 A.2d 776, 797 (Pa.Super. 2006) (stating that a failure to preserve issues by raising them both in the concise statement of errors complained of on appeal and statement of questions involved portion of the brief on appeal results in a waiver of those issues). Any such challenge is, therefore, waived. Moreover, we note that Mother, while arguing against waiver, concedes that she abandoned such a claim. Mother's Reply Brief at 1-2.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

Additionally, relevant to Mother's specific appellate issue, we note that "the interpretation and application of a statute is a question of law that compels plenary review to determine whether the court committed an error of law." **Wilson v. Transport Ins. Co.**, 889 A.2d 563, 570 (Pa.Super. 2005).

"As with all questions of law, the appellate standard of review is *de novo* and the appellate scope of review is plenary." ***In re Wilson***, 879 A.2d 199, 214 (Pa.Super. 2005) (*en banc*).

We have stated:

[We] are constrained by the rules of statutory interpretation, particularly as found in the Statutory Construction Act. 1 Pa.C.S.[] §§ 1501-1991. The goal in interpreting any statute is to ascertain and effectuate the intention of the General Assembly. Our Supreme Court has stated that the plain language of a statute is in general the best indication of the legislative intent that gave rise to the statute. When the language is clear, explicit, and free from any ambiguity, we discern intent from the language alone, and not from the arguments based on legislative history or "spirit" of the statute. We must construe words and phrases in the statute according to their common and approved usage. We also must construe a statute in such a way as to give effect to all its provisions, if possible, thereby avoiding the need to label any provision as mere surplusage.

***Cimino v. Valley Family Medicine***, 912 A.2d 851, 853 (Pa.Super. 2006) (quotation omitted). ***See*** 1 Pa.C.S.[] § 1921(b). Under Section 1921(c), the court resorts to considerations of "purpose" and "object" of the legislature when the words of a statute are not explicit. ***Sternlicht v. Sternlicht***, 583 Pa. 149, 876 A.2d 904, 909 (2005) (referring to consideration of matters such as: (1) occasion and necessity for statute; (2) circumstances under which it was enacted; (3) mischief to be remedied; (4) object to be attained; (5) former law, if any, including other statutes upon same or similar subjects; (6) consequences of particular interpretation; (7) contemporaneous legislative history; (8) legislative and administrative interpretations of such statute).

Moreover,

- 9 -

> [I]t is presumed that the legislature did not intend an absurd or unreasonable result. In this regard, we. . .are permitted to examine the practical consequences of a particular interpretation.

***Commonwealth v. Diakatos***, 708 A.2d 510, 512 (Pa.Super. 1998).

Likewise, pursuant to 1 Pa.C.S. § 1933:

> Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.

1 Pa.C.S. § 1933.

As to the confidentiality of mental health records, 50 Pa.C.S. § 7111

provides:

> (a) All documents concerning persons in treatment shall be kept confidential and, without the person's written consent, may not be released or their contents disclosed to anyone except:
>
>> (1) those engaged in providing treatment for the person;
>>
>> (2) the county administrator, pursuant to section 110;
>>
>> (3) a court in the course of legal proceedings authorized by this act; and
>>
>> (4) pursuant to Federal rules, statutes and regulations governing disclosure of patient information where treatment is undertaken in a Federal agency.
>
> In no event, however, shall privileged communications, whether written or oral, be disclosed to anyone without such written consent. . . .

50 Pa.C.S. § 7111.

Moreover, as to the appointment of a GAL in a custody matter, 23 Pa.C.S. § 5334 states:

**(a) Appointment.--**The court may on its own motion or the motion of a party appoint a guardian ad litem to represent the child in the action. The court may access the cost upon the parties or any of them or as otherwise provided by law. The guardian ad litem must be an attorney at law.

**(b) Powers and duties.--**The guardian ad litem shall be charged with representation of the legal interests and the best interests of the child during the proceedings and shall do all of the following:

. . .

(2) On a timely basis, be given access to relevant court records, reports of examination of the parents or other custodian of the child and medical, psychological and school records.

. . .

(6) Make specific recommendations in a written report to the court relating to the best interests of the child, including any services necessary to address the child's needs and safety. The court shall make the written report part of the record so that it may be reviewed by the parties. The parties may file with the court written comments regarding the contents of the report. The comments filed by the parties shall also become part of the record.[10]

23 Pa.C.S. § 5334 (bold in original) (footnote added).

_____

[10] As reflected by the Editors' Notes:

23 Pa.C.S. § 5334 was suspended insofar as it (1) requires that a guardian ad litem be an attorney, (2) permits the guardian ad litem to represent both the best interests and legal interests of the child, (3) provides the guardian ad litem the right to examine, cross-examine, present witnesses and present evidence on behalf of the child, and (4) prohibits the guardian ad litem from testifying, pursuant to Pa.R.C.P. No. 1915.25.

Editors' Notes 23 Pa.C.S. § 5334.

In addition, Pa.R.C.P. 1915.11-2 states:

(a) The court may, on its own motion or the motion of a party, appoint a guardian ad litem to represent the best interests of the child in a custody action. The guardian ad litem shall be a licensed attorney or licensed mental health professional. The guardian ad litem shall not act as the child's counsel or represent the child's legal interests. Prior to appointing a guardian ad litem, the court shall make a finding that the appointment is necessary to assist the court in determining the best interests of the child.

Pa.R.C.P. 1915.11-2.

Lastly, Pa.R.C.P. 1915.21 provides that the order appointing a guardian ad litem shall provide, in part:

The child's guardian ad litem shall represent the best interests of the child. The guardian ad litem shall not act as the child's attorney or represent the child's legal interests.

It is ordered and decreed that all relevant schools, police departments, hospitals and social service agencies including home and school agencies, who have records, reports and/or information pertaining to the child relevant to the custody of the the child, shall allow the guardian ad litem access to all files and records in its possession, custody or control and shall cooperate in responding to all relevant inquiries. These files/records may include but are not limited to medical, psychological or psychiatric charts including evaluations and progress notes and records, X-rays, photographs, tests, test evaluations, intake and discharge summaries, police records, and school records including report cards, educational assessments and educational plans, relevant to this custody dispute and/or relevant to any special needs or requirements of the child. The guardian ad litem shall have the right to copy any part of the files and records maintained in connection with the child.

It is further ordered and decreed that the guardian ad litem shall be permitted to see and speak with the child, and family, medical and/or social service providers connected with this case, and take all steps appropriate to and consonant with this order.

The guardian ad litem shall provide copies of any reports prepared by the guardian ad litem to each party, or to their counsel, and to

the court not later than 20 days prior to trial. The guardian ad litem shall attend all proceedings and be prepared to testify. The guardian ad litem shall be subject to cross-examination if called to testify by either party or the court.

Pa.R.C.P. 1915.21.

In *M.M. v. L.M.*, 55 A.3d 1167 (Pa.Super. 2012), the trial court ordered the father, over objection, to disclose to the mother mental health records relating to his in-patient hospitalization and post-hospitalization treatment. In reversing in part and remanding, this Court held that the MHPA "is equally applicable in a custody dispute as it is in a civil matter. We hold so especially where, as here, less intrusive alternatives exist to determine the effect of a party's mental health upon the child's best interest." *Id.* at 1173. Important to this Court was the "expectation of confidentiality." *Id.* at 1174. This Court stated, "[T]he importance of confidentiality cannot be overemphasized [and] [t]he purpose of the [MHPA] . . . would be severely crippled if a patient's records could be the subject of discovery in a panoply of possible legal proceedings." *Id.* Instead, noting the "chilling effect" of disclosure of statutorily privileged mental health records, the Court expressed its preference for and existence of a less intrusive means, an updated psychological evaluation. "As the court-ordered psychological evaluation is the least intrusive means to determine how a parent's mental health condition will affect a child's best interest, it is the preferred method of evaluation." *Id.* at 1175 (citation omitted).

Moreover, in **Octave ex rel Octave v. Walker**, 628 Pa. 128, 103 A.3d 1255 (2014), our Supreme Court addressed waiver. The Court recognized the importance of the privilege and protection provided by Section 7111 and held:

> The MHPA, 50 P.S. § 7101 et seq., establishes the rights and procedures for inpatient psychiatric treatment and involuntary outpatient care with the purpose of assuring availability of adequate treatment to mentally ill persons. The confidentiality protections for mental health records afforded by § 7111 exist to enable effective treatment "by encouraging patients to offer information about themselves freely and without suffering from fear of disclosure of one's most intimate expressions to others and the mistrust that the possibility of disclosure would engender." To this end, 7111(a) requires a patient's "written consent" before his mental health records are released or disclosed, except under certain limited circumstances inapplicable here. The Superior Court has held this statutory provision can be "waived," however, if the patient places his mental health at issue in a case.

**Octave ex rel Octave**, **supra**, 103 A.3d at 1259. Nonetheless, the Court found the existence of waiver and held:

> We cannot believe that the Pennsylvania General Assembly intended to allow a plaintiff to file a lawsuit and then deny a defendant relevant evidence, at plaintiff's ready disposal, which mitigates defendant's liability. Rather[,] the General Assembly must have intended the privileges to yield before the state's compelling interest in seeing that truth is ascertained in legal proceedings and fairness in the adversary process. . . .
>
> . . .
>
> It must be emphasized that evidentiary privileges have been viewed by this Court to be in derogation of the search for truth, and are generally disfavored for this reason. The effect of that concern is obvious. Accordingly, we hold a patient waives his confidentiality protections under the MHPA where, judged by an objective standard, he knew or reasonably should have known his mental health would be placed directly at issue by filing the lawsuit.

**Id.** at 1260-61.

- 14 -

In the case *sub judice*, in appointing the GAL and allowing access to the parties' mental health records for the previous three years, the trial court reasoned as follows:

> The confidentiality protections of the Mental Health Procedures Act can be waived where, "judged by an objective standard, [a party] knew or reasonably should have known [their] mental health would be placed directly at issue by filing the lawsuit." This [c]ourt notes that in filing his Petition for Emergency Special Relief, [Father] raised [Mother]'s mental health conditions and [Mother] raised [Father]'s mental health conditions in her responsive Petition for Emergency Special Relief. By filing custody petitions, both parties in this case knew or reasonably should have known that their own mental health would be placed directly at issue at a custody trial. A strong argument can be made that both parties placed their mental health directly at issue and waived confidentiality protections. However, the Supreme Court has urged that this form of implicit waiver of Section 7111 be applied with great caution.
>
> . . .
>
> Understanding this irreconcilable conflict, this [c]ourt chose to apply the Guardian ad Litem statute Section 5334 of the Child Custody Act, to the instant dispute, but in a manner that respects both parents have concerns about the disclosure of their mental health history. On one hand, the Guardian ad Litem needs access to records to represent [Child]'s best interests and to make a statutorily-mandated report and recommendations to this [c]ourt. On the other hand, there appears to be over a decade of mental health treatment potentially available here, most of which does not necessarily encompass the present issues.
>
> Upon consideration of the incomplete testimony of the parties and [Mother]'s Petition for Reconsideration, this [c]ourt determined that access to the parties' records by the Guardian ad Litem should be limited to three years given [Mother]'s specific testimony that she began abusing alcohol at the end of 2016 and spent ten months in inpatient treatment for both alcohol abuse and an eating disorder in 2017. Moreover, during that inpatient treatment, [Mother] admitted that she overdosed on prescription medication. Given that drug and alcohol abuse and mental health conditions must be fully considered under 23 Pa.C.S.

- 15 -

5328(a)(14)-(15), disclosure of records is warranted in this case despite the broadness of Section 7111 of the [MHPA].

Although disclosure of records was ordered, this [c]ourt did not permit the Guardian ad Litem full, unfettered access to the parties' mental health records in consideration of Section 7111. This [c]ourt also specifically limited the Guardian ad Litem's ability to disseminate the records or the information contained therein and stated that the parties retained their ability to object to the Guardian ad Litem's report or his testimony during the custody hearing. Furthermore, the Guardian ad Litem was precluded from sharing those records obtained with any party or with counsel.

Additionally, this [c]ourt took an additional, extraordinary step to seal the trial court record *sua sponte* without objection from either party.

. . .

"Whenever the provisions of two or more statutes enacted finally by different General Assemblies are irreconcilable, the statute latest in date of final enactment shall prevail." "The Legislature has made clear [. . .] that tension between statutes enacted on different dates is generally to be resolved in favor of giving the greatest effect to [the] later-enacted provision."

Section 7111 of the [MHPA] was enacted on July 9, 1976[,] and made effective sixty days later. In 1996, Section 7111 was amended by P.L. 481, No. 77 and has remained effective as drafted since July 2, 1996. Section 5334 of the Child Custody Act was enacted on November 23, 2010[,] and made effective on January 24, 2011. Clearly, Section 5334 was enacted later in time and is to be given the greatest effect. . . .

T.C.O. at 12, 24-25, 31 (citations omitted).

Mother, however, argues that her mental health records are privileged and protected by the MHPA, which supersedes the Custody Act and any corresponding rules of civil procedure. Mother's Brief at 7-8. Mother contends that Section 7111 supersedes Section 5334 because Section 7111 is specific in its provisions, while Section 5334, as well as the related Pennsylvania Rules

of Civil Procedure, are general. *Id.* at 12. She further highlights that, although Section 5334 is the later enacted statute, there is no intent revealed for Section 5334 to "trump" Section 7111. *Id.* at 8-9, 13. Section 7111, when amended, was not amended or even suspended to the extent of any conflict with Section 5334. *Id.* 10, 13. Mother argues:

> Under statutory interpretation, where conflict exists, a specific provision governs over a general provision. First, review of § 5334 reveals that its language, providing the powers and duties to a Guardian ad Litem, is general. . . . The generality of § 5334 is expanded by the rules of civil procedure, not by specific language in a statute itself. Even in the rules of civil procedure, Pa.R.C.P. 1915.11-2(a) is no more specific, and even with reference to the language to be contained in the order granting powers to the Guardian ad Litem by reference to Pa.R.C.P. 1915.21 is just general. Thus, the language of § 5334 speaks in broad and general terms. Neither § 5334 nor the rules of civil procedure identify any limit on the dissemination of content of the mental health information acquired or to whom that information, through the Guardian ad Litem, whether in court or otherwise, may be disseminated.

> In contrast, the MHPA is specific. The MHPA specifies that it applies to mental health records generated and concerning "all involuntary treatment. . . ., whether inpatient or outpatient, and for all voluntary inpatient treatment." The MHPA specifically delineates to whom the mental health records may be disclosed and under what circumstances. The MHPA becomes even more specific through the definition of its terms. Because the MHPA is the more specific of the two provisions, it governs over § 5334 of the Child Custody Act.

> Next, while the MHPA predates § 5334, which would seem to lean in favor of § 5334, a specific statute takes precedent over a general statute. However, this is not the sole factor for the older statute to take precedent over the newer statute. When reviewing the two (2) statutes, there must appear to be a "manifest intent" that the more recent statute trumps the elder statute.

> Comparing both § 7111 and § 5334 reveals that the legislature has made no amendments which would weaken its strength, despite the enactment of 5334. However, modifications

have been made to § 7111. . . . Though § 7111 could have been amended, or even suspended, after the effective date of § 5334, to the extent that it was inconsistent with § 5334, it was not. Thus, it is submitted that the lack of suspension or amendments to § 7111 demonstrates that a "manifest intent" for § 5334 to take precedent over § 7111 is not present and the more specific statute, § 7111, takes precedent over § 5334 and is the controlling statute under the circumstances.

Such a conclusion dove-tails and is consistent with Pennsylvania jurisprudence in the field of custody, where lesser intrusive means for the disclosure of records falling within the MHPA are available and would not lead to offending or causing conflict within the MHPA.

Mother's Brief at 12-13.

Discussing **M.M. v. L.M.**, **supra**, and **Gormley v. Edgar**, 995 A.2d 1197 (Pa.Super. 2010), Mother further maintains that the trial court erred in directing such disclosure to the GAL as there is a less intrusive means to evaluate the status of her mental health and any possible impact with respect to the custody and best interest of Child. Mother's Brief at 13-17.

Moreover, differentiating the instant case from **Octave ex rel Octave**, **supra**, Mother asserts that she did not waive the protection of the MHPA as she did not commence the within proceedings. Mother's Brief at 16-19. She contends:

Procedurally, . . . [Mother] did not commence the present action, rather [Father] did. Because [Mother] did not commence the custody action, she could not have reasonably known that her mental health would be called into question before the action had begun. Also, . . ., this case possesses a less intrusive means to evaluate [Mother]'s mental health and its possible impact on the best interest of the minor child. Therefore, this Court should reject the assertion that [Mother] waived the protection or privilege of the MHPA.

*Id.* at 18.

For the reasons stated by the trial court above and in its thorough and exhaustive opinion, we do not disturb the trial court's determinations.[11] Unlike in *M.M.*, where the records in question were being disseminated to the other party, instantly, they are being disseminated to the GAL.

Moreover, and importantly, here, "less intrusive alternatives exist to determine the effect of a party's mental health upon the child's best interest." *M.M.*, 55 A.3d at 1173. The trial court fashioned less intrusive alternatives by restricting the GAL's access to records from the last three years, restricting the GAL's disclosure of the records, allowing objections to the GAL's testimony and/or report or recommendation, and sealing the record.

We further observe that the court additionally ordered mental health examination and/or testing of the parties. Accordingly, we affirm.

Orders affirmed.

Judge King joins the Opinion.

Judge Kunselman files a Dissenting Opinion.

---

[11] We do not rely on *Octave ex rel Octave*, *supra*, to conclude that Mother waived her claim of confidentiality by putting her own mental health records at issue. Rather, we rely on the trial court's analysis that the court did not violate Mother's rights under the MHPA where the trial court properly appointed a GAL under the Custody Act and utilized the least intrusive means.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>07/08/2020</u>